CARLE FOUNDATION, an Illinois not for profit Corporation, Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

No. 79–1273.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 12, 1979.

Decided Nov. 29, 1979.

As Modified on Denial of Rehearing Feb. 1, 1980.

---

R. Bruce Johnson, Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellant.

Lawrence Gerber, Chicago, Ill., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, and SWYGERT and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

The question raised in this appeal is whether the sales by a tax-exempt hospital pharmacy to a nonexempt clinic and to the clinic's private patients give rise to unrelated business taxable income. We hold that they do and therefore reverse the judgment of the lower court.

I

The Carle Foundation, which is composed of the Carle Foundation Hospital and the Carle Foundation Pharmacy, has been ex-

empt from federal income taxes since 1949 under 26 U.S.C. § 501(c)(3) and its predecessor statute. The Foundation rents out office space within its complex to the Carle Clinic Association, a private enterprise run by doctors who engage in the practice of medicine on a for-profit basis. The Clinic has never been, nor has it requested to be, a tax-exempt organization.

With the exception of a small courtesy staff, the Foundation Hospital is staffed entirely by doctors from the Clinic. The doctors are not employees of the Hospital; they are employees of the Clinic, where they pursue private practice. In addition to the identity of medical staff, the proximity of the Hospital and Clinic results in their also sharing some physical facilities, equipment and services. For example the medical records for all patients in the complex are kept by Hospital personnel and are centrally located in the Clinic area of the compound. Moreover, Clinic facilities are used for laboratory testing, radiological services, electrocardiograms, electroencephalograms and radioisotope testing for patients of the Hospital as well as for private patients of the Clinic. Since their doctors are affiliated with the Foundation Hospital, Clinic patients who require hospitalization are admitted to that hospital. Yet, despite these shared facilities and services, the Clinic and Hospital are distinct legal entities.

The Hospital Pharmacy, part of the tax-exempt Foundation, supplies pharmaceuticals to the Hospital as well as to the Clinic and to some of the Clinic's private patients.[1] Because of these sales to other than the Hospital and its patients, the Internal Revenue Service assessed against the Foundation a $67,266.51 deficiency for the tax years 1971 and 1972. The Foundation paid the assessment and instituted this refund action. The lower court granted the refund with respect to the sale proceeds from the Clinic and its patients, holding that those sales were substantially related to the tax

exempt purpose of the Foundation and therefore did not generate unrelated business taxable income. The Government appealed.

## II

The Government argues that the sale of pharmaceuticals to the Clinic and its private patients constitutes an unrelated trade or business and is therefore taxable under sections 511–13 of the Internal Revenue Code of 1954, 26 U.S.C. §§ 511–13. In essence, those sections provide that an organization shall be taxed on income from a regularly operated trade or business which is unrelated to its tax-exempt purpose. There is no dispute that the Pharmacy conducts a trade or business; rather, the Government argues that these sales by the Pharmacy are "unrelated."

Section 513(a) defines "unrelated trade or business," in pertinent part, as:

[A]ny trade or business the conduct of which is not *substantially related* . . . to the exercise or performance by such organization of its . . . purpose or function constituting the basis for its exemption under section 501 . . . except that such term does not include any trade or business—

\* \* \* \* \* \*

(2) which is carried on, in the case of an organization described in section 501(c)(3) . . . by the organization primarily for the convenience of its . . . patients . . . .

26 U.S.C. § 513(a) (emphasis added).

 We will first address the finding by the lower court "that prescription sales to Clinic outpatients and wholesale [drug sales] to the Clinic . . . have been amply demonstrated to be carried out primarily for the convenience of [the Foundation's] patients," within the meaning of section 513(a)(2). App. 255.[2] Although the lower court alluded to the 1968 Revenue

---

1. The Pharmacy also made pharmaceutical sales to certain nursing home patients and a few non-pharmaceutical sales which the lower court found to be unrelated business taxable

income. The Foundation has not appealed that ruling.

2. Reference to the Government's appendix will hereinafter be cited as "App. . . . . . ."

Rulings which dealt with the conditions under which pharmaceutical sales by an exempt hospital will constitute unrelated business income, it did not address itself specifically to an analysis of Rev.Rul. 68–376, 1968–2 C.B. 246, which gives examples of "patients" within the meaning of section 513(a)(2). Since revenue rulings are to be given weight by the courts, *McMartin Industries, Inc. v. Vinal*, 441 F.2d 1274, 1275–76 (8th Cir. 1971), we must closely analyze the ruling.

The Service listed six examples of relationships that determine whether a person is a "patient": (1) a person admitted to a hospital as an inpatient; (2) a person receiving general or emergency diagnostic, therapeutic, or preventive health services from outpatient facilities of a hospital; (3) a person directly referred to the hospital's outpatient facilities by his private physician for specific diagnostic or treatment procedures; (4) a person refilling a prescription written during the course of his treatment as a patient of the hospital; (5) a person receiving medical services as part of a hospital administered home care program; and (6) a person receiving medical care and services in a hospital affiliated extended care facility. 1968–2 C.B. at 247. In its brief, the Foundation asserts that example (3) is indistinguishable from the situation in this case. See Br. 38.[3] We disagree.

In an explanation of situation (3), the Service gave the following hypothetical fact situation:

C's private physician refers him to the hospital's outpatient diagnostic facilities for a specific diagnostic procedure. The procedure is administered by a hospital-based practitioner affiliated with the hospital. The availability of these diagnostic procedures is an integral part of the services offered by the hospital. C is a patient of the hospital.

1968–2 C.B. at 247.

Based on that hypothetical, the Foundation argues that the Clinic falls within the ambit of the Revenue Ruling because it "is certainly affiliated with" and is "the outpatient department of" the Hospital. Br. 38. Although somewhat appealing at first blush, the fallacy in the Foundation's argument becomes apparent upon a closer examination. On the one hand, the Foundation is urging that, because the Clinic provides outpatient testing for the Hospital,[4] the Hospital and Clinic are a single legal entity. But clearly they are not. The Pharmacy and Hospital are part of a tax-exempt endeavor, while the Clinic is a for-profit, private, tax-paying enterprise. Indeed, as the Government points out in its brief, if the Hospital and Clinic were operated as a single entity, then that entity could not qualify for tax exemption under section 501(c)(3) because of the inurement to private individuals of part of the earnings. Gov't 10.[5] See *Harding Hospital, Inc. v. U. S.*, 505 F.2d 1068, 1078 (6th Cir. 1974).

On the other hand, the Foundation appears to be urging that, for some purposes, its outpatient testing department is *separate* from the Clinic itself. Its argument can be broken down as follows: (1) the Revenue Ruling states that patients referred by their private physicians to the outpatient clinic of a hospital are considered patients of the hospital; (2) the Carle Clinic is staffed by private physicians; (3) when Carle Clinic physicians prescribe diagnostic testing for their patients, it is performed at the Clinic; (4) the Carle Clinic provides outpatient testing services for the Hospital; (5) therefore, under the Revenue Ruling, the Clinic's private patients who receive diagnostic testing must be considered pa-

---

**3.** Brief for the Foundation will hereinafter be cited as "Br. . . . . . ."

**4.** There is no question that Hospital patients using Clinic testing facilities are nevertheless patients of the Hospital so that the sale of pharmaceuticals to them does not constitute unrelated business income. The Government recognized this from the outset and never tried to tax that income. Moreover, the Government has not sought to tax proceeds from sales to Hospital-originated Clinic patients.

**5.** Brief for the Government will hereinafter be cited as "Gov't . . . . . ."

tients of the Hospital. That argument clearly misapprehends the import of the ruling. The Revenue Ruling contemplates the private physician's referring his patient to an outpatient diagnostic facility which is part of a hospital and separate from the physician's private clinic. The mere fact that the Clinic does some testing for Hospital patients cannot transform the Clinic facilities into a part of the Hospital. Likewise, the mere fact that the Clinic does some testing for Hospital patients cannot transform the Clinic's private patients who receive diagnostic testing into "Hospital patients."

The other examples given in the Revenue Ruling are more obviously inapplicable. There is no controversy here about the status, for tax purposes, of any inpatient of the Hospital. Likewise, emergency room patients, former inpatients refilling a prescription, patients in hospital administered home care programs and patients in hospital-affiliated extended care facilities are not in issue here.

### III

■■ Having determined that sales to the Clinic and its private patients are not exempt from unrelated business tax as "primarily for the convenience of its . . . patients," we next turn our attention to whether those sales were nevertheless substantially related to the tax exempt purposes of the Foundation. In its exemption affidavit submitted to the Internal Revenue Service in 1948, the Foundation stated its purposes as follows:

Conducting a hospital for the treatment of sick and disabled persons; engaging in scientific research in the causes and treatment of human diseases; training of internes [sic], resident physicians, surgeons, laboratory technicians, pathologists, and nurses in the scientific diagnosis and hygienic care of sick and disabled persons.

App. 237. Contrary to the conclusion reached by the lower court and the argument advanced by the Foundation, we cannot stretch our analysis to find pharmaceutical sales to the Clinic and its private patients "substantially related" to any of the stated exempt purposes of the Foundation.

■■■ There is very little jurisprudence on which activities will meet the "substantially related" test. Consequently, our analysis must begin with the Treasury Regulations. It is well established that the regulations must be given great weight absent a showing that they are unreasonable or inconsistent with congressional intent. See, e. g., *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831 (1948); *Fawcus Machine Co. v. U. S.*, 282 U.S. 375, 378, 51 S.Ct. 144, 75 L.Ed. 397 (1931). Since we believe the relevant regulations to be wholly consistent with congressional intent in enacting the revenue statutes in question,[6] we turn our attention to the language of the regulations.

26 C.F.R. § 1.513–1(d) reads in pertinent part:

(2) *Type of relationship required.* Trade or business is "related" to exempt purposes, in the relevant sense, only where the conduct of the business activities has causal relationship to the achievement of exempt purposes . . .; and it is "substantially related," . . .

---

6. The unrelated business tax provisions were passed by Congress as part of the Revenue Act of 1950. The Senate Report accompanying the bill states in pertinent part:

The problem at which the tax on unrelated business income is directed is primarily that of unfair competition. The tax-free status of section 101 [now section 501] organizations enables them to use their profits tax-free to expand operations, while their competitors can expand only with the profits remaining after taxes.

Sen.Rep. No. 2375, 81st Cong.2d Sess. (1950), *reprinted in* 1950–2 U.S.Code Cong.Serv. pp. 3053, 3081.

Although some courts have held, and we agree, that the elimination of unfair competition is not the *sole* factor to be weighed, see *Clarence LaBelle Post No. 217 v. U. S.*, 580 F.2d 270, 271–74 (8th Cir. 1978), it is very important in determining whether a given activity is to be taxed as an unrelated trade or business.

only if the causal relationship is a substantial one . . . . [T]he performance of the services from which the gross income is derived must contribute importantly to the accomplishment of those purposes . . . .

(3) *Size and extent of activities.* In determining whether activities contribute importantly to the accomplishment of an exempt purpose, the size and extent of the activities involved must be considered in relation to the nature and extent of the exempt function which they purport to serve . . . . .

26 C.F.R. § 1.513–1(b) elaborates on the above test, enunciating the policy behind finding an activity to be an unrelated trade or business:

The primary objective of adoption of the unrelated business income tax was to eliminate a source of unfair competition by placing the unrelated business activities of certain exempt organizations upon the same tax basis as the nonexempt business endeavors with which they compete. . . . [I]n general, any activity of a [tax-exempt] organization which is carried on for the production of income and which otherwise possesses the characteristics required to constitute "trade or business" . . . and which, in addition, is not substantially related to the performance of exempt functions— presents sufficient likelihood of unfair competition to be within the policy of the tax. . . . Activities . . . from which a particular amount of gross income is derived do not lose identity as a trade or business merely because they are carried on within a larger aggregate of similar activities . . . which may . . . be related to the exempt purposes of the organization. Thus, for example, *the regular sale of pharmaceutical supplies to the general public by a hospital pharmacy does not lose identity as a trade or business merely because the pharmacy also furnished supplies to the hospital and patients of the hospital in* *accordance with its exempt purposes.* . . .

(Emphasis added).

In *Iowa State University of Science and Technology v. U. S.,* 500 F.2d 508, 205 Ct.Cl. 339 (1974), the court applied the unrelated business tax regulations to a situation analogous to the one in this case. A tax-exempt university owned and operated a television station which produced substantial revenues for the school. In holding those revenues to be unrelated business income, the court stated that to determine whether a trade or business was substantially related to an organization's exempt purpose, the relevant test under the regulations is "a comparison of the nature and size of the commercial . . . operations with the extent and scope of its [exempt] operations." *Id.* at 517. Although the relevant test under the regulation applicable in this case is a comparison of the activities in question with the exempt purpose of the organization, *Iowa State* nevertheless provides a useful guide in our analysis. The court stated:

Profits are, although not conclusive, at least some evidence that the business purpose is primary. *American Institute for Economic Research v. United States,* 302 F.2d 934, 938, 157 Ct.Cl. 548, 556 (1962), cert. denied, 372 U.S. 976, 83 S.Ct. 1109, 10 L.Ed.2d 141 (1963). Very substantial profits . . . are also not conclusive but do constitute some evidence indicative of a commercial enterprise. *Scripture Press Foundation v. United States,* 285 F.2d 800, 803, 806, 152 Ct.Cl. 463, 468, 470 (1961), cert. denied, 368 U.S. 985, 82 S.Ct. 597, 7 L.Ed.2d 523 (1962).

\* \* \* \* \* \*

As pointed out above, however, the presence of a profit motivation is not wholly determinative of the issue. Of greater importance is the manner in which the enterprise is conducted; a profitable operation may be justified by factors which, on balance, show that the conduct of the business was substantially related to the exempt purpose of the institution.

*Id.* at 517–18. Finding the operations of the television station *not* substantially re-

lated to the university's exempt purpose, the court held that the predominant characteristic of the station was that of a "commercial" enterprise. *Id.* at 519.

As we pointed out above, although the regulation applicable in *Iowa State* is slightly different from the one applicable in this case, it is nevertheless useful in our analysis.[7] In *Iowa State* the relevant regulation states that a trade or business is substantially related to the exempt purpose of an organization if the *principal purpose* of that trade or business is to further that exempt purpose. In determining the principal purpose, the regulation requires a comparison of the nature and size of the trade or business with the nature and extent of the activities for which the organization was granted exemption. See 26 C.F.R. § 1.513–2(a)(4). In a slightly different vein, the regulation applicable to the Carle Foundation states that a trade or business is substantially related to an organization's exempt purpose if it *contributes importantly* to the accomplishment of that exempt purpose. In determining whether certain activities contribute importantly to the exempt purpose, the regulation requires that the size and extent of the activities be considered in relation to the nature and extent of the exempt function they purport to serve. See 26 C.F.R. § 1.513–1(d)(2) and (3). To tax the nonhospital sales by the Foundation Pharmacy in this case, our ultimate conclusion need not be, as it was in *Iowa State*, that "commercial" activities were more substantial than "exempt" activities. Like the court in *Iowa State*, however, we must consider the relationship between the activities and the exempt function of the organization, so that the guidelines articulated in *Iowa State* are quite instructive.

For sales to the Clinic and its private patients, the Pharmacy is in direct competition with its nonexempt counterparts. Indeed, for the tax years in question, the Pharmacy grossed over $800,000 from sales to other than the exempt Hospital and its patients, resulting in close to $150,000 of

income for the Foundation. App. 250. Although not absolutely conclusive, these substantial profits appear to contribute importantly to a business rather than an exempt purpose and clothe this portion of the Pharmacy's activities with the attributes of a commercial enterprise. To the extent that they are conducted in the same manner as a commercial enterprise, we hold that the activities of the Carle Foundation Pharmacy constitute an unrelated trade or business within the meaning of 26 U.S.C. §§ 511–13. Our holding is consistent with regulation § 1.513–1(d)(3) which reads in pertinent part:

> [W]here income is realized by an exempt organization from activities which are in part related to the performance of its exempt functions, but which are conducted on a larger scale than is reasonably necessary for performance of such functions, the gross income attributable to that portion of the activities in excess of the needs of exempt functions constitutes gross income from the conduct of unrelated trade or business.

### IV

■ The Foundation places much emphasis in its brief on Revenue Ruling 69–463, 1969–2 C.B. 131, where the Service concluded that the leasing by a hospital of office space to a for-profit medical group did not constitute an unrelated trade or business. Particular importance is attached to the portion of the ruling which states:

> The hospital has established that the presence of the group practice at the hospital has had the effect of . . . fulfilling the hospital's role as the health center of the community. . . .
> 
> \* \* \* \* \* \*
> 
> It is held that the group practice described above contributes importantly to the hospital's operations and is therefore substantially related to the carrying on of hospital functions.

1969–2 C.B. at 131. Despite the Foundation's reliance on this ruling, we do not find

---

7. The regulation used in *Iowa State* is applicable to tax years beginning before December 13, 1967, while the regulation used in this case is applicable to tax years beginning after December 12, 1967. Compare 26 C.F.R. § 1.513–2(d) with 26 C.F.R. § 1.513–1(g).

it to support the broad proposition that all business dealings between an exempt hospital and a nonexempt but closely related clinic are necessarily related to the tax-exempt purpose of the hospital. The stated purpose of the Foundation is to conduct "a hospital for the treatment of sick and disabled persons." App. 237. There is no evidence that the sale of pharmaceuticals to the Clinic and its private patients substantially furthers that purpose. Unlike the situation addressed in the ruling, the sale of pharmaceuticals to the Clinic and its patients was not an inducement to the Clinic to locate in the Foundation medical complex and is not substantially related to providing health care to the Hospital's patients.

Similarly, the Foundation's reliance on three other Revenue Rulings is misplaced. Revenue Ruling 69–267, 1969–1 C.B. 160, concluded that a hospital gift shop, which was patronized by patients, visitors making purchases for patients, and employees, was substantially related to the hospital's exempt function because it provided "a facility . . . to improve the physical comfort and mental well-being of [the hospital's] patients." *Id.* Contrary to the Foundation's position, the sale of pharmaceuticals to the Clinic and its private patients cannot be analogized to sales to or for the benefit of hospital inpatients. Moreover, while gift shop sales to hospital employees keep "employees and medical staff on [hospital] premises throughout their working days," thereby "increas[ing] the hospital's efficiency," no such overriding considerations are present in this case.

Likewise, both the operation of a cafeteria and coffee shop for employees, medical staff and persons visiting patients, Rev.Rul. 69–268, 1969–1 C.B. 160, and the operation of a parking lot for patients and visitors, Rev.Rul. 69–269, 1969–1 C.B. 160, are clearly distinguishable from the sales which form the basis of this appeal. As with the income derived from the gift shop, the proceeds received from the operation of the cafeteria and parking lot were substantially related to the hospital's exempt purpose because they facilitated visits to patients by friends and relatives, constituting "supportive therapy that assists in patient treat-

ment and encourages their recovery." Rev. Rul. 69–268, 1969–1 C.B. at 160. No such benefits are derived by Foundation Hospital patients from the sale of pharmaceuticals to the Clinic and its patients.

This case is more similar to the one addressed in Revenue Ruling 68–375, 1968–2 C.B. 245. Contrary to the conclusion reached by the lower court, we do not find the facts of that ruling materially different from the facts here. In the ruling, a hospital owned an adjacent medical office building which it leased to some members of its medical staff. The patients treated at the office building were, like the Carle Clinic patients, their physicians' private patients. As with the Foundation Hospital, the hospital in the ruling did not have governing authority over the treatment of patients by physicians in their private offices.

The hospital operated a pharmacy in the office building, primarily for the convenience of the patients of the doctors in the office building. The Service found that the sales to those private patients resulted in unrelated business income for the hospital. Since pharmaceutical supplies were purchased "as an incident to the purchaser's visit to his private physician, rather than as an incident to his use of any of the hospital facilities," the Service concluded that those sales were not substantially related to the tax-exempt purpose of the hospital. 1968–2 C.B. at 246. By the same token, we find that the sale of pharmaceuticals to the Clinic and its patients are not incidental to the use of the Hospital facilities and are not substantially related to the purposes of the Foundation.

The Foundation urges, however, that the sale of pharmaceuticals to Clinic patients furthers its tax-exempt purpose because of the "continual flow of patients between the Hospital and the Clinic. In the event an outpatient being treated by a Clinic physician requires hospitalization, that patient will be hospitalized at the Hospital." Br. 8. We do not find that fact to provide the link necessary to meet the "substantially related" test. Indeed, the same argument could be made with respect to the situation addressed in Revenue Ruling 68–375. While it is undoubtedly true that a private patient

requiring hospitalization will be admitted to the hospital with which his physician is affiliated, that characteristic is not unique to the Carle Clinic/Carle Foundation Hospital relationship. The fact remains that the pharmaceuticals in question, like the pharmaceuticals in the ruling, were purchased "as an incident to the purchaser's visit to his private physician rather than as an incident to his use of any hospital facilities." It is immaterial that the pharmacy in the ruling sold primarily to patients of the private doctors, while the Foundation Pharmacy made most of its sales to the exempt Hospital and its patients. In the ruling, the Service only classified as an unrelated business the pharmacy's sales to the private patients. Similarly, the only sales in this case which constitute an unrelated business are those to the Clinic and its patients. Moreover, the unrelated sales by the Foundation Pharmacy, although not predominant, are quite substantial.

Accordingly, we find the judgment of the lower court to be clearly erroneous and hold that the Foundation is not entitled to a refund of the unrelated business income taxes paid by it for the tax years 1971 and 1972.

REVERSED.