**HI–PLAINS HOSPITAL,
Plaintiff-Appellant,**

v.

**UNITED STATES of America,
Defendant-Appellee.**

No. 81–1082.

United States Court of Appeals,
Fifth Circuit.

March 15, 1982.

---

Smith, Baker, Field & Clifford, Inc., Edward R. Smith, Lubbock, Tex., for plaintiff-appellant.

William W. Guild, Dept. of Justice, Tax Division, Dallas, Tex., Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Chief Appellate, Richard Farber, R. Bruce Johnson, Michael J. Roach, Tax Division, U. S. Dept. of Justice, Washington, D. C., for defendant-appellee.

Before CLARK, Chief Judge, RUBIN and TATE, Circuit Judges.

CLARK, Chief Judge:

Hi-Plains Hospital (Hi-Plains) appeals from the district court's decision holding that pharmaceutical sales to nonhospital patients generated taxable business income unrelated to the tax-exempt operations of Hi-Plains. We reverse in part and remand in part.

I

Hi-Plains was established in 1945 to provide hospital and other related services to its members. Hi-Plains is located in Hale Center, Texas, a small town of about 2,250 people. Prior to 1937, Hale Center had been served by a resident doctor. From 1937, when the doctor died, until 1945, when Hi-Plains was established, Hale Center lacked medical services.[1] The establishment of Hi-Plains both provided a physical facility in which patients could be treated and served as an inducement to doctors to practice in Hale Center. Toward this end, Hi-Plains offered to provide a doctor who would work on its staff with furnished offices in the hospital, complete nursing as-

1. Hi-Plains notes that another doctor may have practiced a "few months" during 1937 or 1938. This doctor's short stay merely confirms Hi-Plains' contention that it was difficult to get doctors to practice in Hale Center.

sistance, and a bookkeeping and billing service for the benefit of his private practice. Although it is undisputed that the cost of such facilities and services would normally consume 40% of a doctor's fees, Hi-Plains offered these services in return for five percent of a doctor's collected fees. Moreover, the hospital made certain of its own services, such as x-ray, laboratory facilities and a pharmacy, available to its doctor's private patients. Thus, if the doctor wanted a patient who had come in for an office visit to be x-rayed, the doctor would refer that patient to the hospital which would make the x-ray and bill the patient.

The pharmacy, the income of which is questioned in this case, makes sales to hospital patients, to private patients of the doctors located in the hospital and to the general public. The bulk of these sales consists of prescription drugs. Only a small percentage of the pharmacy's income is derived from the sale of nonprescription items. The pharmacy neither advertises nor uses display areas to attract customers. It maintains only a counter where orders can be placed. A small cardboard sign, which the state requires be displayed, is the pharmacy's only identifying mark.

The Commissioner of Internal Revenue assessed a tax, for the years 1973, 1974, 1975 and 1976, on sales by the pharmacy both to the private patients of the staff doctors and to the general public. He claimed that these sales constituted a trade or business which is unrelated to the exempt function of Hi-Plains. Hi-Plains paid the tax and then sued for a refund in federal district court.

The district court rejected Hi-Plains' claim for a refund because it found that sales by the pharmacy to nonhospital patients were not substantially related to Hi-Plains' exempt purpose, "namely that of providing a hospital." The district court also rejected Hi-Plains' claim that provision of a pharmacy was itself an exempt activity. The court found that it was providing a hospital which gave rise to the exemption and that any added benefits must relate to the hospital.

## II

Although Section 501(a) of the Internal Revenue Code exempts the income of certain charitable organizations from tax, section 511 imposes a tax on any income generated by an unrelated trade or business conducted by a charitable organization. *See* I.R.C. § 511. Section 513(a) of the Code defines an unrelated trade or business as:

any trade or business the conduct of which is not substantially related (aside from the need of such organization for income or funds or the use it makes of the profits derived) to the exercise or performance by such organization of its charitable, educational, or other purpose or function constituting the basis for its exemption under section 501 . . . .

I.R.C. § 513(a). This definition is in turn explained by Treasury Regulation § 1.513–1(a) which sets forth three elements which are required to prove an unrelated trade or business. It must be: i) a trade or business within the meaning of section 162 of the Code; ii) which is regularly carried on; and iii) which is not substantially related to the exempt function of the organization. *See* Treas.Reg. § 1.513–1(a). There is little question that the sale of drugs by Hi-Plains to nonhospital patients is a trade or business which is regularly carried on. The question turns on whether such sales are substantially related to the exempt function of Hi-Plains.

Section 1.513–1(d) provides guidelines for determining whether an activity is substantially related to the exempt function of a charitable organization. *See* Treas. Reg. § 1.513–1(d). The activity must be causally related to the exempt function of the organization. *See* Treas.Reg. § 1.513–1(d)(2). Moreover, the causal connection must be one which "contributes importantly" to the accomplishment of that function. The regulations provide that this determination "depends in each case upon the facts and circumstances involved." *Id.* Finally, the regulations note that even if an activity is "related in part" it is not substantially related if it is conducted on a scale larger

than is "reasonably necessary" to accomplish the organization's purpose. *See* Treas. Reg. § 1.513–1(d)(3). The regulations thus require a case-by-case identification of the exempt purpose, an analysis of how the activity contributes to that purpose and an examination of the scale on which the activity is conducted.

■ In making this inquiry, the district court identified the exempt purpose of Hi-Plains as "that of providing a hospital." It rejected Hi-Plains' claim that pharmacy sales to private patients were substantially related because it reasoned that pharmacy sales could only be related to the hospital's exempt purpose if the sales were made as an incident of a person's use of the hospital. Because the sales in this case did not arise in connection with a customer's direct use of the hospital, the district court held that such sales were substantially unrelated to Hi-Plains' exempt function. The district court erred, however, in not considering this question, as the Treasury Regulations require, in light of the particular facts and circumstances of this case. It is only by looking at the particular problems Hi-Plains faced in providing medical services in Hale Center that we can determine whether the pharmacy sales to the staff doctors' patients contributed significantly to achieving that goal. Whether an activity contributes importantly to achieving an exempt purpose turns in each case on the particular problems encountered in attempting to achieve that purpose.

Not only did Hale Center lack any medical facilities when Hi-Plains was established, it was also subject to a problem shared by many rural communities, the inability to attract doctors to staff those facilities and administer medical care. It is undisputed that Hale Center had lacked a doctor for eight years before Hi-Plains was established and that no doctors, other than those associated with Hi-Plains, have come to Hale Center since then. It is also undis-

puted that Hi-Plains has engaged in a variety of measures designed to induce doctors to settle in Hale Center. It provided doctors with facilities and service personnel at a fraction of their normal cost. It has also made its own services available for the use of the doctors' private patients. The government concedes that:

> [t]he record is abundantly clear that these services are provided to the doctors as a convenience to lower their overhead in private practice .... [T]he hospital provides support services for the doctors in their private practices, as an inducement for the doctors to staff the hospital ....[2]

In capsule, the purpose of Hi-Plains is to provide medical services and attracting and holding doctors is essential to the accomplishment of that purpose.

■ The availability of the hospital's pharmacy for use by the doctor's private patients is causally related to inducing doctors to practice at Hi-Plains. Such sales facilitate the practice of medicine and thus contribute importantly to the goal of making medical services available at Hi-Plains. The ready availability of prescription drugs for the doctor's patients, no less than the availability of the hospital's x-ray and laboratory facilities for their service creates an inducement to practice medicine at Hi-Plains. Indeed, doctors practicing at Hi-Plains testified that the availability of the pharmacy had been a material factor in their decision to settle in Hale Center. Although pharmacy sales to nonhospital patients will generally not be considered to contribute importantly towards providing hospital services, *see* Rev.Rul. 68–375, 1968–2 C.B. 245, the problems faced by Hi-Plains indicate that in this case such sales do play an important role.

Finally, there is no indication that these sales are conducted on a larger scale than is reasonably necessary to accomplish Hi-Plains' exempt purpose. *See* Treas.Reg.

---

**2.** The government made these statements as part of its argument that the doctors' private patients were not converted to hospital outpatients merely because they received an x-ray or an injection from a hospital employee. The

context in which these statements were made does not affect their recognition of the fact that Hi-Plains provided support services to induce doctors to staff the hospital.

§ 1.513–1(d)(3). The pharmacy primarily sells prescription drugs to the patients of the hospital and to the private patients of the staff doctors. It has not sought to expand its market or the type of products it sells. It does not advertise nor does it use display areas to attract customers. In short, it lacks the indicia of a modern commercial drug store and appears to have directed its efforts solely at meeting the needs of the hospital and its staff doctors.

The government argues that the legislative history of section 513, the Treasury Regulations and the case law require a different result. We disagree. The government states that the purpose of the unrelated business tax was to alleviate the unfair competitive advantage given to tax-exempt organizations that compete with tax paying businesses. In this context, the government notes that sales by a hospital pharmacy to nonhospital patients were specifically mentioned as an unrelated trade or business in the Senate Report on the Tax Reform Act of 1969, P.L. 91–172, 83 Stat. 487. The difficulty with this argument, as explained below, is that the Senate Report refers to an amendment that was eventually rejected by the Conference Committee. *See* Conf. Rep.No. 782, 91st Cong., 1st Sess., *reprinted in* [1969] U.S. Code Cong. & Ad. News 2392, 2406.

Both the House and the Senate were concerned that business income from a collateral function might be insulated from taxation because an unrelated trade or business was carried on as a part of an exempt activity. The version of the bill proposed by the Senate identified three specific business activities which were being shielded from taxation by their relation to other exempt activities. *See* S.Rep.No. 552, 91st Cong., 1st Sess., *reprinted in* [1969] U.S. Code Cong. & Ad. News 2027, 2104. One activity was sales by a hospital pharmacy to the general public. *See id.* The Conference Committee, however, rejected the per se Senate bill in favor of a more general version proposed by the House. *See* Conf. Rep.No. 782, 91st Cong., 1st Sess., *reprinted in* [1969] U.S. Code Cong. & Ad. News 2392, 2406. The House Bill, and the bill ultimate-

ly enacted, provided that "an activity does not lose identity as a trade or business merely because it is carried on within a larger aggregate of similar activities ... which may, or may not, be related to the exempt purpose of the organization." Tax Reform Act of 1969, § 121(c) (codified at I.R.C. § 513(c)). While the rejection of the Senate version does not imply that sales by a hospital pharmacy to the general public were not within the ambit of section 513, it does indicate that the Congress rejected a mechanical application of section 513 to such sales in favor of a more general approach. Moreover, the purpose of this amendment was to identify particular activities as a trade or business within the meaning of section 513. Such identification does not answer the remaining question of whether that activity is substantially related to the exempt purpose of the charitable organization. *See* H.Rep.No. 413, 91st Cong., 1st Sess., *reprinted in* [1969] U.S. Code Cong. & Ad. News 1645, 1695.

The government also notes that section 1.513–1(b) of the Treasury Regulations expressly refers to sales by a hospital pharmacy to the general public. However, the context of this reference indicates that it is inapposite to the issue before us. In a subsection explaining what constitutes the first of the three required elements, "a trade or business," the regulations state that an activity does not lose its identity as a trade or business merely because it is incorporated in a larger aggregate of similar activities and give, as an example, sales by a hospital pharmacy to nonhospital patients. *See* Treas.Reg. § 1.513–1(b). The regulations essentially incorporate the amendment to section 513 enacted in the Tax Reform Act of 1969. This reference to sales by a hospital pharmacy, like the reference in the Senate Report, does no more than establish that sales by Hi-Plains' pharmacy constitute an identifiable trade or business. The fact that such sales satisfy the first element of a three part test does not answer the question of whether they satisfy the last part—are they substantially related to Hi-Plains' exempt purpose?

The government finally relies on *Carle Foundation v. United States*, 611 F.2d 1192 (7th Cir. 1979), *cert. denied*, 449 U.S. 824, 101 S.Ct. 85, 66 L.Ed.2d 27 (1980). In *Carle*, a pharmacy in a tax exempt hospital sold drugs to both hospital patients and to the private patients of doctors who operated an independent clinic association on a for-profit basis in offices located in the hospital complex. The Seventh Circuit rejected a claim that sales to these private patients were exempt. It found that the "stated purpose of [Carle] Foundation is to conduct 'a hospital for the treatment of sick and disabled persons.' ... There is no evidence that the sale of pharmaceuticals to the [independent] Clinic and its private patients substantially furthers that purpose." 611 F.2d at 1199.

*Carle*, however, is not inconsistent with our holding. The facts present in *Carle* give no indication that the hospital had any difficulty in attracting doctors to its staff. The *Carle* court considered that pharmacy services might be used to induce doctors to staff the hospital but found that there was no evidence in that case to support that proposition. *See id.* Here, the evidence shows that a small rural community which was without medical services chose to make its hospital pharmacy available to service the private patients of any doctor who would serve in the community. This was only one, though an important component, of a bundle of benefits designed to attract and hold the medical doctor whose presence was essential to accomplish the broad goal of providing a hospital.

### III

Our holding, that the pharmacy sales to private patients of the doctors are substantially related to the provision of hospital service and therefore not taxable under section 511 of the Code, does not dispose of this case. It appears from Hi-Plains' brief that a small portion of the pharmacy's income is derived from sales to the general public. *See* Brief for Appellant at 6, 16 (income attributed to "Other Doctors"). Because sales to the general public, as opposed to sales to the private patients of the staff doctors, are not substantially related to Hi-Plains' exempt purpose, we must address Hi-Plains' other arguments.[3]

█ Hi-Plains contends that the sale of drugs was itself an exempt activity. Hi-Plains relies on statements in its articles of incorporation and in the exemption letter from the IRS that Hi-Plains was organized to provide hospitalization and related services. It also relies on the fact that for a majority of the years which Hi-Plains has been in operation, Hale Center has lacked a pharmacy. The district court considered Hi-Plains' arguments but found that "it is the providing of a hospital that gives rise to the exemption and the added benefits must relate to the hospital." We cannot say that the district court's finding is clearly erroneous and therefore reject Hi-Plains' argument. *See Van Ooteghem v. Gray*, 654 F.2d 304 (5th Cir. 1981) (en banc).

The parties below did not apparently distinguish between pharmacy sales to the private patients of the staff doctors and sales to the general public. Instead, they treated all nonhospital sales as one category. It is unclear whether sales to the general public, which involve only a small amount of money, were only made occasionally and thus not taxable. *See* Rev.Rul. 68–374, 1968–2 C.B. 242. We remand this issue to the district court. If the parties are unable to resolve this minor issue, the district court must give further consideration to the matter in light of what we have held here.

REVERSED IN PART AND REMANDED IN PART.

---

**3.** Hi-Plains also argues that the private patients of the staff doctors could be considered hospital outpatients since they frequently received x-rays, injections and laboratory tests at Hi-Plains. Even assuming that this argument is correct, there is no indication that the general public, as opposed to the private patients of the staff doctors, received any hospital services. This argument is thus inapposite to the issue of whether pharmacy sales to the general public are tax exempt.

534

TATE, Circuit Judge, dissenting:

The majority's scholarly and pragmatic opinion makes a persuasive presentation for its holding that, under the highly individualized facts presented to us, the profits from the sales by the tax-exempt hospital's pharmacy to private patients of the staff doctors should likewise be regarded as tax-exempt, because "substantially related" to the tax-exempt purpose of the charitable institution. I.R.C. §§ 501(a), 511, 513(a). The majority concludes that the activity meets this test essentially because it "contributes importantly" to the accomplishment of the tax-exempt function, see Treas. Reg. § 1.513–1(d)(2), under the narrow facts before us—that, to accomplish the tax-exempt purposes of affording hospital facilities in this small (pop. 2,250) community, it was necessary to provide substantial inducements to physicians to practice at the hospital center.

The majority therefore concludes that the sale of prescriptions at a profit to the private non-hospitalized patients of these medical practitioners (engaged in a private medical practice, *not* part of the tax-exempt function) can be considered substantially related to the tax-exempt purposes of the hospital itself—just as is, concededly, the sale of prescriptions to hospital patients, or (to entice the doctors to come) the furnishing by the hospital of office space to the doctors and of substantial below-cost assistance (nursing, bookkeeping, and billing) to them for their private and for-profit medical practices.

I respectfully disagree. The hospital pharmacy is open for sales at a profit to the general public and to private patients of the doctors (already furnished offices and other services by the hospital in aid of its tax-exempt purpose). I think the sales of prescriptions at a profit to non-hospital patients of doctors engaged in that regard in the practice of medicine for their personal profit is too attenuated in connection with the tax-exempt purpose so as to itself be tax-free.

The determinative issue is whether this activity "contributes importantly" to the accomplishment of the tax-exempt purpose, Treas.Reg. § 1.513(d)(2), so as to be considered as "substantially related . . . to the exercise or performance . . . of its charitable . . . function constituting the basis for its exemption under section 501." I.R.C. § 513(a). I would not disturb the administrative determination to the negative, nor the district court's findings to the negative (which, insofar as factual, are not clearly erroneous). The majority concedes that the sale of drugs to the general public, at least if on a non-occasional basis, would *not* be substantially related (i.e., contribute *importantly*) to the tax-exempt purpose. No more, in my opinion, should be the sale at profit of drugs by prescription to the private patients of doctors (themselves in this regard engaged in a medical practice for their own profit)—prescriptions that could as well be filled by pharmacies elsewhere (although, admittedly, more conveniently at the hospital's own pharmacy).

I therefore agree with the findings and conclusions of the district court, as follows:

The court finds the evidence clearly establishes that the sales by the pharmacy to the private patients of the physicians were incidental to the purchaser's visit to his private physician and not incidental to the use of services provided by the hospital. Consequently, these sales constitute a trade or business which is not substantially related to the exercise or performance of plaintiff's exempt purpose, namely that of providing a hospital. The mere fact that the doctors operated out of the hospital under the arrangement described above and that these pharmacy sales were made by employees of the hospital does not qualify such sales as being a portion of the exempt purpose of the hospital. Since the sales are related to the private practices of the physicians and are substantially unrelated to the hospital, the income produced is taxable under 26 U.S.C. § 511.

It is noted that the legislative history of these pertinent statutes indicates that one of the bases of their enactment was to prevent unfair competition. This

court finds that this purpose would be served by denying plaintiff recovery in this case. During the period of years in question, the evidence indicated that two or more pharmacies had commenced their operation in Hale Center but were unable to continue in business for any lengthy period of time. To the contrary, the hospital's pharmacy was able to sustain its business, show a profit, and continue in business to this date. It would have a favored status in the event a tax exempt privilege were to be allowed for the hospital pharmacy income.

\* \* \* \* \* \*

This court has guidance from *Carle Foundation v. United States of America*, 611 F.2d 1192 (7th Cir. 1979), in which the Seventh Circuit expressly held that pharmaceutical sales such as those presently in question give rise to unrelated business taxable income. The pharmaceuticals which were purchased by the doctors' private patients were as an incident of that person's visit to the private physician rather than as an incident to the hospital. *Carle, supra*, at 1200. The material facts of this case are the same as those in *Carle* and this court elects to follow that holding.

Therefore, pharmacy sales to all persons who are not patients of the hospital, whether they are private patients of the physicians who office in the hospital or members of the community who come into the hospital for the sole purpose of purchasing pharmaceuticals, are taxable as unrelated business income.

\* \* \* \* \* \*

In concluding, I must nevertheless admit the attractiveness of the individualized case-by-case consideration espoused by the majority. Bright-line ease of administration of the tax laws should yield to individualized equitable application, if indeed that was the intention of the Congress.

In my opinion, however, the danger of the majority's approach is that the judicial subjectivity in weighing the graduated factors—how small the town, how "important" the contribution, how "substantial" the re-

lationship—will lead to uncertain and unequal applications, and also, to much greater judicial involvement in the ultimate determination of whether income from an unrelated trade or business conducted by a charitable organization is taxable. *Compare* majority opinion (income not taxable) *with* the Seventh Circuit's *Carle Foundation, supra*, (income taxable under generally similar circumstances). The majority's approach is further open to a more substantive objection. By hair-splitting judge-determined distinctions with regard to generically similar facts, profit-making activities conducted by charitable institutions separate from their tax-exempt purpose will be permitted to enjoy a competitive advantage over tax-paying businesses attempting to afford the same service, contrary to the Congressional intent made manifest by the legislative history and statutory provisions requiring taxation of such profit-making subsidiary operations.

I therefore respectfully dissent.