**FIRST NATIONAL BANK OF FAYETTEVILLE, ARKANSAS, Executor of the Estate of Jesse W. Cannon, Deceased, Appellee,**

v.

**UNITED STATES of America, Appellant.**

**No. 82-2494.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1983.

Decided Feb. 10, 1984.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Robert A. Bernstein, Douglas G. Coulter, Atty., Tax Div., Dept. of Justice, Washington, D.C., for appellant; W. Asa Hutchinson, U.S. Atty., Fort Smith, Ark., of counsel.

Lewis D. Jones, Jones & Segers, Fayetteville, Ark., for appellee.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

The First National Bank of Fayetteville, Arkansas, executor of the Estate of Jesse W. Cannon, and trustee for the Jesse W. Cannon Scholarship Foundation, recovered $122,657.88 it had previously paid pursuant to the Internal Revenue Service's deficiency notice. The district court[1] in its judgment concluded that the provisions of 26 U.S.C. § 2055(e)(2) (1979) relating to split-interest trusts were not applicable because Jesse's widow, Grace Cannon, had elected to take against his will and received the funds as though the husband had died intestate and had no interest in the trust.

The facts are not in dispute. The issue was ruled by the district court on cross motions for summary judgment. Jesse Cannon's will left the residence to his wife, Grace, and established a trust of the remainder of his estate to establish a scholarship fund for students at the University of

---

1. The Honorable Oren Harris, United States District Judge for the Western District of Ar-

kansas.

Arkansas. The portion of the will establishing the scholarship foundation to be administered by the bank directed that from the net income of the trust the trustee was to pay his wife, Grace, the sum of $100 per month. Grace elected to take against the will, and an order of the probate court of Washington County, Arkansas, based on an agreement between the bank as executor of the estate and Grace, decreed that Grace would receive nothing from the will of Jesse, but the estate was ordered to pay Grace a lump sum of $50,000 plus $600 per month during her lifetime. Grace received the monthly payments until her death on August 31, 1975. On July 30, 1976, eleven months after Grace's death, the probate court of Washington County, Arkansas, closed the estate of Jesse Cannon except for a determination of the tax liability question involved in this case and authorized the Foundation to commence operation of the trust. It found that the Foundation was the sole residuary beneficiary of the last will and testament of Jesse Cannon and transferred the accounting responsibility for the trust on that date to the Chancery Court of Washington County, Arkansas.

The bank as executor of the estate filed a federal estate tax return showing that no federal estate taxes were due and claiming a charitable contribution to the Jesse W. Cannon Scholarship Foundation in the amount of $439,556.36. The IRS ruled that 26 U.S.C. § 2055(e)(2) of the code had not been complied with and a deficiency notice was directed to the bank. The bank paid the sum of $122,657.88 pursuant to the deficiency notice, and thereafter applied to the Chancery Court of Washington County, Arkansas, for an order amending the trust to comply with the provisions of this section. The Chancery Court entered an order nunc pro tunc amending the trust to comply with the provisions of § 2055(e)(2) and to meet the objections of the Internal Revenue Service to its previous order entered in 1978.

The district court found that the Foundation qualified as a charitable use pursuant to the provisions of 26 U.S.C. § 2055(a) (1979 and Cum.Supp.1983). Based on the facts set forth above, the court concluded

that Grace was never a beneficiary of the last will and testament of Jesse, that she was entitled to nothing by virtue of the trust created in his will, and that the provisions of 26 U.S.C. § 2055(e)(2) are not applicable. It further found that if the provisions of the trust had been applicable to the widow, the chancery court's order of July 14, 1981, would have modified the trust to comply with the requirements of 26 U.S.C. § 2055(e)(3) (Cum.Supp.1983).

The United States, for reversal, argues that the district court erred both in its holding that 26 U.S.C. § 2055(e)(2) is inapplicable and in its finding that even if § 2055(e)(2) were applicable, the trust had been sufficiently modified as provided in § 2055(e)(3) to qualify for the deduction. The government agrees that Grace did not take her interest under the will. Even so, § 2055(e)(2) provides that when an interest in property "passes or has passed from the decedent ... [to a charitable beneficiary] and an interest ... in the same property passes or has passed ... from the decedent ... [to a non-charitable beneficiary] ..." the statute applies. Because interests in the residue of the decedent's estate passed from the decedent both to the widow and the Foundation, it argues that 26 U.S.C. § 2055(e) is applicable to the charitable bequest.

We conclude that the district court correctly ruled that 26 U.S.C. § 2055(e) was not applicable although for different reasons than those articulated by the district court.

I.

The government argues that the inapplicability of 26 U.S.C. § 2055(e)(2) was not a proper basis upon which to base a decision because that particular ground was not raised in the taxpayer's claim for refund. According to the government, the only ground for recovery raised by taxpayer's claim for refund was whether the charitable bequest qualified for deduction under § 2055(e)(3) as a result of the post-death modification of decedent's will.

■ A ground for refund neither specifically raised by, nor included within the general language of, a timely claim for refund cannot be considered by a court in which a suit for refund is subsequently initiated. *E.g., Angelus Milling Company v. Commissioner,* 325 U.S. 293, 295–99, 65 S.Ct. 1162, 1163–65, 89 L.Ed. 1619 (1945); *United States v. Felt and Tarrant Manufacturing Co.,* 283 U.S. 269, 272–73, 51 S.Ct. 376, 377–78, 75 L.Ed. 1025 (1931); *Ottawa Silica Co. v. United States,* 699 F.2d 1124, 1138 (Fed. Cir.1983); *Group Life and Health Insurance Co. v. United States,* 660 F.2d 1042, 1059 (5th Cir.1981) *cert. denied,* 457 U.S. 1132, 102 S.Ct. 2958, 73 L.Ed.2d 1349 (1982). Section 7422(a) of the Internal Revenue Code of 1954 provides that no suit shall be maintained in any court for the recovery of any internal revenue tax until a claim for refund has been filed with the Secretary of the Treasury, "according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." Section 301.6402–2(b)(1) of the Treasury Regulations requires that the claim set forth in detail each ground upon which a refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof.

■ Although taxpayer's claim for refund specifically refers to § 2055(e)(3) rather than merely questioning the applicability of § 2055(e), it is evident from other documents in the record that the basic issue in the case involved the applicability of § 2055(e) and that the IRS was aware that that was the nature of the claim. In the notice of deficiency sent to the taxpayer the IRS, in its explanation of adjustments, stated simply that the deduction was disallowed under the provisions of § 2055(e). Besides specifically mentioning § 2055(e)(3) and attempts to comply therewith, in the claim for refund filed by taxpayer there is also a general statement to the effect that a refund is owed to the estate because a charitable deduction should be available to the estate. Also, contrary to what the government alleges, taxpayer did raise the issue of applicability of § 2055(e) in its complaint. Paragraph 7 of the complaint filed in the

district court states that "the claim for refund is based upon § 2055(e)(3) and the entire § 2055 deduction . . . ."

The reasons for the rule requiring a taxpayer to state the grounds for his claim are "to prevent surprise . . . to give adequate notice to the Service of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative investigation and determination . . . ," to provide the Commissioner with an opportunity "to correct any errors, and . . . to limit the scope of any ensuing litigation to those issues which have been examined . . . ." *Union Pacific Railroad v. United States,* 182 Ct.Cl. 103, 109–10, 389 F.2d 437, 442 (1968).

■ Where the claim for refund states general grounds for relief, an item raised in litigation, but not specifically mentioned in the claim will be permitted if the taxpayer adequately alerted the IRS to the fact that the item is a ground for refund. *Ottawa, supra,* 699 F.2d at 1139 n. 6; *Helis v. Usry,* 496 F.2d 1319, 1321 (5th Cir.1974); *Union Pacific, supra,* 389 F.2d at 442. In this case both the taxpayer's claim for refund and his complaint filed in court refer to § 2055(e) and the availability of a charitable deduction thereunder. The inapplicability of § 2055(e) falls within the general language of the grounds raised in the taxpayer's claim for refund. It has been held that merely stating a section of the Code on which the taxpayer relies is sufficient notice to the IRS of the nature of the claim. *St. Luke's Hospital of Kansas City v. United States,* 494 F.Supp. 85, 91 n. 1 (W.D.Mo. 1980); *Santa Cruz Building Association v. United States,* 411 F.Supp. 871, 876–77 (E.D.Mo.1976). *Cf. Walker v. United States,* 143 F.Supp. 566, 567 (N.D.Tex.1956) (merely stating that collection of penalty is unconstitutional is sufficient).

In *Ney v. United States,* 171 F.2d 449 (8th Cir.1948), this Court reiterated that a taxpayer cannot, after having filed a claim for refund on one ground, shift to a totally different ground in his subsequent action to recover. 171 F.2d at 451. That is not the

situation in this case. The issue of the inapplicability of § 2055(e) is integral to the grounds specifically raised in the refund claim and thus may be considered as part of the initial ground. *See Ottawa, supra,* 699 F.2d at 1139. We conclude that taxpayer's claim for refund met the required standard of specificity. Therefore, the inapplicability of U.S.C. § 2055(e) would not be an improper ground on which to base the decision in this case.

▉▉▉▉ Even if taxpayer failed to satisfy the procedural requirements of § 301.6402–2(b)(1) of the Treasury Regulations and U.S.C. § 7422(a), the government waived its right to object to the sufficiency of the taxpayer's claim for refund because of its failure to timely raise its objection. *Helis, supra,* 496 F.2d at 1321. Waiver may occur either by a very tardy motion on the part of the government or by action on the merits by the IRS. *See, e.g., Angelus Milling Co., supra,* 325 U.S. at 296–98, 65 S.Ct. at 1164–65. The government did not raise its objection before the district court, but raised it only after judgment in a memorandum filed in support of a motion to amend the judgment in relation to the interest to be assessed on the taxpayer's refund. The government waived its right to object to the sufficiency of the claim for refund when it waited to do so until judgment was entered.

## II.

The government argues that § 2055(e)(2)[2] is applicable, that the chancery court's orders fail to modify the trust so as to qualify under § 2055(e)(3),[3] and that, therefore, no charitable deduction is available. The taxpayer contends that § 2055(e)(2) is inapplicable because a split-interest trust was never created in that Grace's interest did not pass from the decedent nor was her interest in the same property as that of the charity.

Section 2055(e)(2) of the Internal Revenue Code of 1954 provides that an estate tax charitable deduction is not allowed for transfers of property to a trust which has both charitable and non-charitable interests unless, in the case of a remainder trust, the trust is in one of three qualifying forms: a charitable remainder annuity trust,[4] a charitable remainder unitrust,[5] or a pooled income fund.[6] The charitable remainder bequest to the Scholarship Foundation as originally set out in decedent's will was not in one of the three prescribed forms.

Section 2055(e)(2) applies when the non-charitable and charitable interests pass "from the decedent" and are "in the same property." As is conceded by the govern-

---

**2.** Where an interest in property ... passes or has passed from the decedent to a ... [charitable beneficiary] and an interest (other than an interest which is extinguished upon the decedent's death) in the same property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to a ... [non-charitable beneficiary], no deduction shall be allowed under this section for the interest which passes or has passed to the ... [charitable beneficiary] unless—

    (A) in the case of a remainder interest, such interest is in a trust which is a charitable remainder annuity trust or a charitable remainder unitrust ... or a pooled income fund ..., or

    (B) in the case of any other interest, such interest is in the form of a guaranteed annuity or is a fixed percentage distributed yearly of the fair market value of the property (to be determined yearly). 26 U.S.C. § 2055(e)(2).

**3.** [I]n the case of a will executed before December 31, 1978, or a trust created before such date, if a deduction is not allowable at the time of the decedent's death because of the failure of an interest in property which passes from the decedent to a ... [charitable beneficiary] to meet the requirements of subparagraph (A) or (B) of paragraph (2) of this subsection, and if the governing instrument is amended or conformed on or before December 31, 1981, or, if later on, or before the 30th day after the date on which judicial proceedings begun on or before December 31, 1981 (which are required to amend or conform the governing instrument), become final, so that the interest is in a trust which meets the requirements of such subparagraph (A) or (B) ..., a deduction shall nevertheless be allowed.... 26 U.S.C. § 2055(e)(3).

**4.** 26 U.S.C. § 664(d)(1) (Cum.Supp.1983).

**5.** 26 U.S.C. § 664(d)(2) (Cum.Supp.1983).

**6.** 26 U.S.C. § 642(c)(5) (Cum.Supp.1983).

ment, and was found by the district court, Grace did not take her interest under the will. However, property may pass from the decedent in a variety of ways other than by will. In determining whether an interest in property has passed from a decedent, 26 U.S.C. § 2056 and the regulations thereunder relating to marital bequests are applicable. Treas.Reg. § 20.2055–2(c)(2)(e) (1983). According to the Treasury Regulations[7] a property interest gained as a result of electing against the will and a property interest assigned or surrendered to a surviving spouse as a result of the settlement of a will contest are treated as having passed from the decedent to his surviving spouse. *See First National Exchange Bank of Roanoke v. United States,* 335 F.2d 91, 93 n. 7 (4th Cir.1964); *Allen v. United States,* 359 F.2d 151, 155 (2d Cir.) *cert. denied,* 385 U.S. 832, 87 S.Ct. 71, 17 L.Ed.2d 67 (1966).

■ Although we agree with the government that Grace's non-charitable interest "passed from the decedent" even though she did not take under decedent's will, we affirm the conclusion of the district court that § 2055(e)(2) is not applicable on the ground that the non-charitable and charitable interests are not in the same property.[8]

We find support for our decision in *Oetting v. United States,* 712 F.2d 358 (8th Cir.1983), a recent opinion by this court involving a somewhat similar issue. In *Oetting* the decedent's will created a trust, the beneficiaries of which were both charitable and non-charitable. Pursuant to the terms of the will, $100 a month from the trust income was to be paid to three elderly ladies so long as each lived. Any remaining trust income above this amount was to be divided equally among five remainder beneficiaries, four of which were qualified charities. By the terms of the trust agreement, the trust would terminate upon the death of the last of the three elderly ladies, and the trust corpus would then be distributed outright in equal parts to the five remainder beneficiaries. *Oetting, supra,* 712 F.2d at 359.

The trustees petitioned for and the Circuit Court of St. Louis County entered a decree providing that trust assets be used to purchase annuities for the elderly ladies, guaranteeing payment to each of them of $100 per month for life, and that four-fifths of the assets of the trust be distributed to the four charitable beneficiaries immediately.[9]

The executor filed an estate tax return, claiming a charitable deduction in the amount which had been transferred to the charitable beneficiaries. The IRS disallowed the charitable deduction under 26 U.S.C. § 2055(e). On appeal this Court held that although the will created a split-interest charitable bequest, a charitable deduction was available because, after the court decree, the property in which the non-charitable beneficiaries had an interest was capable of being measured and severed from the solely charitable property in the residuary estate. *Oetting, supra,* 712 F.2d at 362.

The circumstances in *Oetting* and the present case are not exactly the same. In *Oetting* the beneficiaries' interests were modified by court decree, while in this case Grace's interest was the result of her election to take against the will and the ensu-

---

**7.** "... If the surviving spouse elects to take against the will ..., then the property interests offered thereunder are not considered as having 'passed from the decedent to his surviving spouse' and the dower or other property interest retained by her is considered as having so passed...." Treas.Reg. § 20.2056(e)–2(c) (1983).

"If as a result of [a] ... controversy involving the decedent's will ..., a property interest is assigned or surrendered to the surviving spouse, the interest so acquired will be regarded as having 'passed from the decedent to his surviving spouse' ...." Treas.Reg. § 20.-2056(e)–2(d)(2) (1983).

**8.** Because of our conclusion that § 2055(e)(2) is inapplicable, we do not reach the contention that the orders of the Chancery Court sufficiently amended the trust as provided in § 2055(e)(3), thereby qualifying for a deduction.

**9.** The remaining one-fifth would, as provided in the trust, be held until the death of the last of the three elderly ladies, with income paid to the remaining beneficiary or her descendants *per stirpes. Oetting, supra,* 712 F.2d at 360.

ing settlement agreement. In both cases, however, the result is the same in that the non-charitable beneficiaries' interests were then capable of being measured and severed from the charitable property. In reaching its decision, the Court in *Oetting* referred to Rev.Rul. 83–20, 1983–4 Int.R.B. 14.

In Rev.Rul. 83–20 the decedent's will had bequeathed the residue of his estate to a charitable organization. Under the applicable state law, the surviving spouse had been awarded an allowance for support, payable out of the residue, during the administration of the estate. The allowance would terminate in the event of the spouse's death or remarriage or upon completion of administration of the estate. The question before the IRS was whether the charitable deduction should be disallowed under § 2055(e)(2) because an interest in the residue had passed for both charitable and non-charitable purposes. The IRS concluded that the deduction should be allowed, reasoning that the only property in which the spouse had an interest was that portion of the residuary estate equal to the maximum amount payable to her as an allowance for support. The ruling went on to state that the "portion of the residuary estate certain to be received by charity (or not subject to diversion for a noncharitable purpose) is property in which no noncharitable interest exists and is therefore deductible and not a split interest."

Under the settlement agreement in this case, it is clear that a certain portion of the residuary estate is not subject to diversion for a non-charitable purpose. The interest Grace received under the settlement agreement is analogous to the allowance for support payments referred to in Rev.Rul. 83–20. The $50,000 lump sum plus the $600 per month for life in which Grace had an interest is capable of being measured and sev-

ered from the solely charitable property in the residuary estate.[10] This is the only property in which a non-charitable interest exists. The remainder of the property is not subject to diversion for a non-charitable purpose and is certain to be received by the Scholarship Foundation.

We also find Rev.Rul. 78–152, 1978–1 C.B. 296, cited by appellants, to be persuasive.[11] In Rev.Rul. 78–152 the decedent's will left the residue of his estate in trust. The trust income was payable to his spouse for life and the remainder was payable to a qualifying charity. The charitable remainder interest was not in the form of a charitable remainder annuity trust or unitrust, or pooled income fund. The spouse filed a timely election to take against the will. According to the IRS, the filing of the election to take against the will prevented the non-charitable interest from passing under the will. The IRS allowed the charitable deduction, reasoning that the property which passes from the decedent to the spouse by reason of the election is not the same property that the charity takes under the will.

The facts in the present case are very similar except that in this case the spouse, after electing to take against the will, agreed to a settlement under which she would receive a lump sum of $50,000 plus $600 per month for her life. The distinction between these two situations is not one which changes the fact that where the spouse's interest does not pass under the will, the property interest which passes from the decedent to the spouse is not the same property that the charity takes under the will.[12]

As explained in *Oetting,* § 2055(e) was enacted to eliminate abuses of the charitable deduction through the "split-interest be-

---

**10.** This is especially so in this case due to Grace's death on Aug. 31, 1975.

**11.** Revenue rulings, while not controlling authority, can be persuasive. *Bob Jones University v. United States,* —— U.S. ——, ——, 103 S.Ct. 2017, 2031, 76 L.Ed.2d 157 (1983); *Oetting, supra,* 712 F.2d at 362.

**12.** The government claims that no deduction is allowable for a remainder interest passing to a

charity as the result of the settlement of a will contest where the original bequest is not in the form of a charitable remainder annuity trust or unitrust or pooled income fund. According to the IRS this situation is different than where there is an election to take against the will. Revenue Ruling 77–491, 1977–2 C.B. 332, states that interests passing as a result of the compromise of a will contest are traceable to the rights which are the source of the compromise; there-

quest." 712 F.2d at 360. Congress was concerned with instances where a non-charitable beneficiary retained a substantial interest in the estate and benefited as well from a charitable deduction for a remainder interest. "Often the deduction bore little relation to the actual benefit ultimately received by the charity." *Northern Trust Co. v. United States,* 41 A.F.T.R.2d 78–1523, 78–1524 (N.D.Ill.1977). The special requirements of § 2055(e) were meant to "provide a better means of assuring that the amount received by the charity will accord with the charitable deduction allowed to the donor." S.Rep. No. 91–552, 91st Cong., 1st Sess., *reprinted in* 1969 U.S.Code Cong. & Ad. News 1645, 2116, 2118.

This case involves none of the abuses which § 2055(e) was enacted to prevent. The charitable deduction sought by the bank does not exceed the actual benefit to the charity; nor is the value of the charity's interest unascertainable. Therefore, the deduction should be allowed.

The government also argues that if the charitable deduction is allowed, interest on the overpayment should be calculated only from July 11, 1979, pursuant to a specific provision of § 2055(e)(3). As the government makes clear in its brief, this special rule relating to accrual of interest applies only when § 2055(e) is applicable. Since we conclude that § 2055(e) is not applicable, the rule applied by the district court, entitling the taxpayer to recover interest from the date of overpayment to a date within thirty days of the issuance of the refund

check was proper. 28 U.S.C. § 2411 (Cum. Supp.1983).

We affirm the judgment of the district court allowing the charitable deduction, including the amount of interest awarded.

A true copy.

---

fore, an interest passing to charity pursuant to such a compromise is not deductible if the charity's interest under the will being contested would not have been deductible.

Since there was no will contest in the instant case, and the charity received its interest under the will and not under the terms of the settlement agreement, Revenue Ruling 77–491 is not controlling. The settlement agreement under which Grace took her interest was the result of Grace's election to take against the will, not the result of the compromise of a will contest.

At least one court has held that even where the charity receives its interest as the result of the compromise of a will contest, a charitable deduction is available. *Northern Trust Co. v. U.S.,* 41 A.F.T.R.2d 78–1523 (N.D.Ill.1977). The court stated that the limitations on charita-

ble deductions under § 2055(e)(2) were not applicable because under the settlement agreement the charitable and non-charitable beneficiaries took separately. The court also pointed out that the reason for the special requirements of § 2055(e)(2), to provide a better means of assuring that the amount received by the charity will accord with the charitable deduction allowed the estate, did not exist in this situation. *Northern Trust, supra,* 41 A.F.T.R.2d at 78–1525.

Rev.Rul. 78–152 expressly distinguished Rev. Rul. 77–491. We believe that the facts in the present case are analogous to the facts in *Northern Trust* and the circumstances as described in Rev.Ruling 78–152 rather than Rev. Ruling 77–491.