The AMERICAN COLLEGE OF PHYSICIANS

v.

The UNITED STATES.

No. 100–74.

United States Court of Claims.

Feb. 18, 1976.

John B. Huffaker, Philadelphia, Pa., attorney of record, for plaintiff. Charles R. Pascoe, John J. Runzer and Pepper, Hamilton & Scheetz, Philadelphia, Pa., of counsel.

Scott P. Crampton, Asst. Atty. Gen., Washington, D. C., for defendant. Theodore D. Peyser, Donald H. Olson, and Richard D. Silvester, Washington, D. C., of counsel.

Before COWEN, Chief Judge, DAVIS and KASHIWA, Judges.

ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

COWEN, Chief Judge.

This case concerns the validity of Treasury Regulations Section 1.513–1(b) and (d)(4)(iv), examples 6 and 7 promulgated in 1967 pursuant to Sections 511 through 513 of the Internal Revenue Code of 1954,[1] insofar as they subject to tax, as unrelated business income, the advertising profits of an exempt organization's journal.[2] Plaintiff, the Ameri-

---

91 Cong., 1st Sess. 148 (1969) (1969–3 Cum. Bull. 518).

1. Unless otherwise noted, all references hereinafter to the Code are to the Internal Revenue Code of 1954, and to applicable provisions in force in 1968 and 1969.

2. As originally enacted under the Revenue Act of 1950, ch. 994, §§ 301, 331, 64 Stat. 947, 957, and as reenacted under the 1954 Code, Section 511(a)(1) imposed a tax at corporate rates on the "unrelated business taxable income" of all organizations otherwise exempt from tax under Section 501. Section 512 defined "unrelated business taxable income" as the income of an exempt organization derived from any unrelated trade or business regularly carried on by it. Section 513(a) defined "unrelated trade or business," in pertinent part, as "any trade or business the conduct of which is not substantially related (aside from the need of such

can College of Physicians, seeks a refund of $376,976.86, plus interest, in Federal income taxes paid for the calendar years 1968 and 1969.

The College, a Delaware corporation organized in 1915 and classified by the Internal Revenue Service as an exempt organization under Section 501(c)(3) of the Code, is a medical society comprised of physicians primarily specializing in internal medicine. The activities of the taxpayer include post-graduate seminars and courses on topics of interest to physicians, funding of research fellowships, holding of regional and national conventions to discuss current medical topics, and the publication of *The Annals of Internal Medicine.* The *Annals* is a highly regarded medical journal, widely read by members of the medical profession and considered by many to be the outstanding journal in the field of internal medicine. The publication of the *Annals* is an enterprise which admittedly is substantially related to the tax-exempt purposes for which the plaintiff was organized. In fact, the President and the Executive Vice President of the College regard the *Annals* as the most important component of plaintiff's educational program.

The *Annals* is composed of both editorial and advertising material. The advertising is strictly limited to products (largely pharmaceuticals) pertaining to internal medicine. During the years in suit, plaintiff's income from advertising in the *Annals* accounted for $1,820,392 of plaintiff's total income of $4,642,777 from all sources. The advertising functions of the *Annals* are conducted separately from its editorial functions. The advertising screening committee is composed of the Executive Vice President of the College and three internists. The advertising staff is compensated on a salary basis. The advertising and editorial sections are prepared and sent to the printer independently of each other.

The character and extent of the advertising screening process as well as the educational value of the advertisements, are in dispute.[3] The *Annals* regularly competes for advertising income with commercially published medical journals which, because of their non-exempt status, must in some instances charge higher rates than the plaintiff.

In compliance with the 1967 regulations, plaintiff for the first time paid an income tax on its advertising income for the years 1968 and 1969. Plaintiff filed a timely claim for refund for those years and, after more than 6 months had elapsed without action on the claim, this suit was filed. The question presented for decision is whether plaintiff's net income from advertising in its medical

organization for income or funds or the use it makes of the profits derived) to the exercise or performance by such organization of its charitable, educational, or other purpose or function constituting the basis for its exemption under section 501. * * * "

In 1969, Congress prospectively amended these sections, Pub.L. No. 91–172, 83 Stat. 536, to validate the 1967 regulations here at issue. Accordingly, our decision is of effect only for the period between promulgation of the 1967 regulations, effective December 13, 1967, and enactment of the statutory amendments, effective December 31, 1969. As the Government concedes, however, the views of the 1969 Congress as to the meaning of the statute enacted in 1950 and the validity of the 1967 regulations promulgated pursuant thereto, are entitled to little, if any, weight. *United States v. Southwestern Cable Co.,* 392 U.S. 157, 170, 88 S.Ct. 1994, 2001, 20 L.Ed.2d 1001, 1012 (1968).

**3.** Plaintiff has submitted affidavits by internists which suggest that the journal's adver-

tisements have substantial educational value and, indeed, constitute an "abbreviated medical textbook article on the specific drug." *Plaintiff's Motion for Summary Judgment,* Sadusk Affidavit, at para. 8. Defendant, however, offers contrary evidence to the effect that the advertisements, albeit accurate and not misleading (pursuant to FDA standards), fail to offer comparative cost and qualitative data vis-a-vis competing drugs, are not necessarily up-to-date or indicative of recent developments in the field, and would in no case provide sufficient basis for a physician's use or prescription thereof. *Defendant's Cross Motion for Summary Judgment,* at 7–12. Since we view as dispositive the issue of whether plaintiff's advertising activities, as a matter of law, constituted a "trade or business" for tax purposes—irrespective of whether the advertisements themselves are or are not substantively related to plaintiff's exempt purpose— we find it unnecessary to resolve this essentially factual dispute.

journal for the years 1968 and 1969 is taxable as the income of an unrelated trade or business within the meaning of Sections 511 through 513 of the Code. As the case is presented to us, the resolution of this question rests upon a determination of whether Treasury Regulations, Section 1.513–1(b) and (d)(4)(iv), examples 6 and 7, constitute an invalid interpretation of the statute pursuant to which they were promulgated.

The 1967 regulations define a "trade or business" as any income-producing activity, and plaintiff contends that they are invalid because they fragment the journal of an exempt organization into exempt editorial and non-exempt advertising "activities" for the purpose of the unrelated business income tax. In illustrating the type of activity which is taxable as unrelated business income, the regulations provide in part, at Section 1.513–1(b):

> [A]ctivities of soliciting, selling, and publishing commercial advertising do not lose identity as trade or business even though the advertising is published in an exempt organization periodical, which contains editorial matter related to the exempt purposes of the organization.

If the regulations are valid, as defendant contends, then the advertising activities of plaintiff's journal may properly be treated as an unrelated trade or business and the income therefrom taxed accordingly. If invalid, as plaintiff contends, then the journal's advertising and editorial activities should be treated as inseparable parts of a single, integrated enterprise, all income of which is wholly exempt from Federal income tax.[4] Since we find that the regulations at issue impermissibly enlarge the scope of the applicable statute, we conclude that plain-

tiff is entitled to a refund of taxes paid, plus interest, on its advertising income for the years 1968 and 1969. Accordingly, we grant plaintiff's motion for summary judgment, and deny defendant's cross motion.

Relying primarily on its analysis of the legislative history of the 1950 Act, the Government makes the following arguments in support of its position:

1. The legislative history of Sections 511 through 513 of the Code indicates that Congress intended, by means of the unrelated business income tax, to eliminate unfair competition not only by business *enterprises* operated by exempt organizations, but also by business *activities* thereof, so long as the tax exemption privilege accorded such organizations an unfair competitive advantage over their non-exempt counterparts engaged in essentially the same profit-producing activities.

2. Legislative history demonstrates that Congress intended the phrase "trade or business," as used in section 513, to have the same broad meaning as it had under what is now Section 162, governing the deduction of business expenses and encompassing generally any offering of goods or services for profit. Such an interpretation, as expressly adopted in the 1967 regulations, comports with the broadly remedial purpose of the original statute. Moreover, plaintiff's reliance on certain narrower definitions of "trade or business" found elsewhere in the Code (*e. g.*, Sections 270, 346 and 355) is misplaced, inasmuch as the Code does not purport to offer a fixed and uniform definition of that phrase.

3. In allowing the taxpayer to offset editorial expenses against unrelated advertising income, the 1967 regulations

---

4. Defendant makes the alternative argument that, should the applicable regulations be held invalid, a trial will be necessary to determine, as a factual matter, (1) whether plaintiff's advertising department operated as a separate enterprise (*e. g.*, as an independent advertising placement agency), and (2) whether the advertisements themselves are unrelated to plaintiff's exempt educational purpose. We disagree. The question of the educational value, or relatedness to plaintiff's exempt purpose, of

the advertisements is, in our view, subsidiary to the issue of the proper scope to be accorded the statutory definition of "trade or business." *See* note 3 *supra.* Similarly, a factual inquiry into the character of a single and ostensibly integrated journal's advertising activities would appear unnecessary where the ultimate issue is whether a journal, as a matter of law, may properly be fragmented into separate editorial and advertising activities for tax purposes.

based on Section 512(a) are consistent with the statute's basic purpose of achieving competitive parity between the profit-making enterprises of exempt and commercial organizations, since disallowance of such deductions would place exempt organizations in a competitively *less* favorable position than their commercial counterparts. Furthermore, although the editorial content of plaintiff's journal is educational and, if sold alone, would generate tax-exempt income, when that editorial content is directly exploited as the vehicle to generate unrelated advertising income, the cost of the editorial content, is, functionally, "directly connected with the carrying on of [the advertising business]," as required for the deduction thereof under Section 512(a) of the Code.

These same basic contentions were made by the Government and rejected by the First Circuit in *Massachusetts Medical Society v. United States,* 514 F.2d 153 (1st Cir. 1975), a case involving the taxability as unrelated business income of profits from advertising in the *New England Journal of Medicine.* Defendant concedes that *Massachusetts Medical* is factually indistinguishable from the instant case, but challenges the correctness of that decision and urges us not to follow it here. After careful consideration, however, we agree with the First Circuit's reasoning and the result it reached in that case. Accordingly, we find it unnecessary to do more than set forth the following summary of the First Circuit's conclusions and to adopt them as the basis for our decision in this case:

■ 1. The 1967 regulations contravene the congressional intent by fragmenting an integrated enterprise into its constituent activities. This view is in accord with the virtually unanimous opinion of commentators. The examples used in the 1950 Act to illustrate what operations would or would not be taxed contemplate integrated enterprises. There is little support in the legislative history for the regulation's flat equation of a trade or business with any activity conducted as an integral part of an exempt enterprise. The 1950 Act was a fairly limited measure, designed to distinguish the customary activities of exempt organizations from the operation of independent business enterprises entirely unrelated to the educational purpose of the organization. The publication of advertising in tax-exempt educational journals was a well-established practice before 1950, and Congress did not intend to treat such advertising on a par with an independently run advertisement placement agency.

■ 2. Although the legislative history suggests that Congress intended the phrase "trade or business," as used in Section 513, to have the same meaning as it had in the present Section 162 (governing business expense deductions), the integrated publication of a magazine would qualify as a "trade or business." Moreover, the Government has cited no Section 162 precedent, nor can any be found, for fragmenting an operation run as an integrated whole into its component parts.[5] Also, a central determina-

---

5. In its *Reply Brief,* at 5–6, defendant argues that the First Circuit's analysis of Section 162, as the legislative source for the definition of "trade or business" applicable under Section 513, squarely conflicts with *Iowa State University of Science and Technology v. United States,* 500 F.2d 508, 205 Ct.Cl. 339 (1974); *Adirondack League Club v. Commissioner,* 55 T.C. 796 (1971), *aff'd per curiam,* 458 F.2d 506 (2d Cir. 1972); and *Five Lakes Outing Club v. United States,* 468 F.2d 443 (8th Cir. 1972). These cases, according to defendant, hold generally that a nonprofit organization cannot merge the tax consequences of profitable and nonprofit activities simply by placing them under a single corporate roof, but that such activities must be separately classified for pur-

poses of determining which expenses are deductible under Section 162. Read in their factual contexts, however, these cases appear to us to be inapposite.

In *Iowa State,* for example, the court held that expenses of a University's two nonprofit radio stations were not deductible from the income of its profit-making television station under Section 162, inasmuch as the latter was found to constitute an unrelated business under Section 513. We fail to perceive how the reasoning or result in that case, as defendant apparently contends, mandates the fragmentation of an enterprise run as an integrated whole into its constituent profit-making and nonprofit parts. Indeed, the issue of "fragmentation" was not even presented in *Iowa*

tion to be made under definitions of "trade or business" found elsewhere in the Code, to which reference is also made in the legislative history, is whether a particular activity is a business in its own right or merely a part of another business (*e. g.,* Sections 270 (hobby losses), 346 and 355 (partial liquidations and spin-offs)).

3. Treasury Regulations Section 1.512(a)–1(a) and (d)(2), which permit expenses attributable to a journal's exempt editorial activities to be offset as deductions against taxable advertising income, are inconsistent with the regulations' assumption that advertising constitutes a separate, unrelated business, and with Section 512(a) of the Code, which ostensibly limits deductions to expenses "directly connected" with such unrelated business (i. e., having "a proximate and primary relationship" thereto, Treasury Regulations Section 1.512(a)–1(a)). Although the provision for such deductions was no doubt prompted by Treasury's desire to place exempt organization journals on a competitive parity with their commercial counterparts (which *may* deduct all expenses, both advertising and editorial), it is doubtful that Congress, in 1950, would have approved such an anomalous result. Nor does the theory that, for purposes of the deductions, commercial organizations customarily conduct these ostensibly unrelated businesses together, support the Government's interpretation that the statute contemplated fragmenting operations likewise customarily conducted as an integrated whole.

Accordingly, IT IS ORDERED that plaintiff's motion for summary judgment is granted; defendant's cross motion for summary judgment is denied, and judgment is hereby entered in favor of the plaintiff in the sum of $376,976.86, plus interest thereon as provided by law.

State, inasmuch as that case concerned not the relationship between the programming and advertising departments of an exempt television station, but the relationship among three entirely separate enterprises—two admittedly exempt radio stations and one non-exempt television station.

Similarly *Adirondack League* concerned the deductibility under Section 162 of expenses incurred by a nonprofit membership corporation in the operation of its exempt recreational preserve, from income derived by that corporation through the conduct of its non-exempt timber business. Again, the treatment of the relationship between an admittedly exempt recreational preserve and an admittedly non-exempt timber business would appear to offer scant precedent for the treatment of the relationship between the advertising and editorial departments of a single, integrated journal. Nor, finally, can much support for defendant's position be derived from *Five Lakes,* which denied the deduction of a social club's losses on its recreational operations from the income it received on the rental of its adjacent land.