**AMERICAN COLLEGE OF PHYSICIANS, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 415–82T.**

United States Claims Court.

Oct. 21, 1983.

John B. Huffaker, Philadelphia, Pa., with whom was Patricia A. Carpenter, for plaintiff.

W.C. Rapp, Washington, D.C., with whom were Asst. Atty. Gen. Glenn L. Archer, Theodore D. Peyser, and Donald H. Olson, Washington, D.C., for defendant.

## OPINION

KOZINSKI, Chief Judge.

Plaintiff American College of Physicians, a tax-exempt organization, challenges the Commissioner's determination that income earned from advertising in the College's journal, *Annals of Internal Medicine,* is subject to the Unrelated Business Income Tax (UBIT). 26 U.S.C. §§ 511–513 (1976).

## Facts [1]

The College is an organization exempt from taxation under section 501(c)(3). Its tax-exempt purposes are to uphold and maintain high standards in medical education, medical practice and medical research; to encourage research, especially in clinical medicine; and to foster measures for the prevention of disease and for the improvement of public health. In furtherance of its exempt purposes, the College publishes *Annals of Internal Medicine* which contains scholarly articles relevant to the practice of internal medicine. *Annals* has a worldwide reputation as one of the most respected journals in its field. The journal is provided to the College's members without charge and to nonmembers on a per issue basis or by subscription.

Each monthly issue of *Annals* contains commercial advertisements relating exclusively to medical products (primarily drugs) and classified notices relating principally to employment in the practice or teaching of medicine. These advertisements are not dispersed throughout the journal but appear in discrete "stacks" at the beginning and end of the publication. In general, the College's advertising rates are competitive with those of other medical journals.

## Questions Presented

Sections 511–513 of the Internal Revenue Code provide that the income of otherwise tax-exempt organizations is taxable if it is earned by regularly conducting a trade or business not substantially related to the organization's exempt purposes. The parties have stipulated that the College's activity of soliciting and publishing advertisements in *Annals* was a regularly conducted trade or business. They disagree as to whether it is substantially related to the College's exempt purposes.

Even if publishing advertisements in *Annals* is held not to be substantially related to the College's exempt purposes, the income is nevertheless tax-exempt if the ad-

vertisements are published primarily for the convenience of the College's members. 26 U.S.C. § 513(a)(2) (1976). The parties further disagree as to whether the advertising in *Annals* meets this standard.

## Discussion

### A. *The Relatedness Issue*

Under section 513(a) the income from a trade or business is tax-exempt if the conduct of the trade or business is substantially related to the performance of the organization's tax-exempt purposes. To come within section 513, the relationship between the business and the tax-exempt purpose must be a substantial one, i.e. it must "contribute importantly" to the accomplishment of the organization's exempt purposes. Treas. Reg. § 1.513–1(d)(2) (1975).

1. Defendant argues that, to avoid the UBIT, the very conduct or operation of the business, rather than merely its product, must be substantially related to the tax-exempt purpose. To illustrate this proposition, defendant refers to an example in the regulations which concludes that income from advertisements solicited by a student-run newspaper is tax-exempt. Treas.Reg. 1.513–1(d)(4)(iv) example (5) (1975). Defendant explains that students working on the paper are engaging in an educational activity: learning how to run a newspaper. The publication of advertising teaches students how to solicit business, set prices and lay out ads. The income from the advertising is exempt, defendant argues, because the very operation of the advertising business contributes importantly to the educational function. Whether the advertisements themselves advance the organization's tax-exempt purposes is, in defendant's view, irrelevant.

While defendant's test fits neatly within the example given, it is not clear that the Commissioner has consistently followed it. *See, e.g.,* Rev.Rul. 75–516, 1975–2 C.B. 220; Rev.Rul. 69–463, 1969–2 C.B. 131; Rev.Rul. 69–267, 1969–1 C.B. 160.[2] At least until the

---

1. The court made oral findings of fact after trial which was held on September 14, 1983.

2. In Rev.Rul. 69–267, 1969–1 C.B. 160, for example, a hospital operated a gift shop patronized by patients, visitors and employees. The

Internal Revenue Service itself takes a position more consistent with the view suggested by its attorney, the court will consider whether the conduct *or* the product of a business is related to the organization's tax-exempt purposes.

2. Plaintiff does not contend that the conduct of the advertising business is substantially related to the College's exempt purposes, so the inquiry is whether the advertising itself is so related. Plaintiff's theory is that the advertising performs an educational function, supplementing the journal's editorial content. Medicine is a constantly changing science and the advertising contains factual and technical data which, according to plaintiff, can help physicians keep up.

■ The court finds plaintiff's argument unpersuasive. The evidence is clear that plaintiff did not use the advertising to provide its readers a comprehensive or systematic presentation of any aspect of the goods or services publicized.[3] Those companies willing to pay for advertising space got it; others did not. Moreover, some of the advertising was for established drugs or devices and was repeated from one month to another, undermining the suggestion that the advertising was principally designed to alert readers of recent developments.[4] Some ads even concerned matters that had no conceivable relationship to the College's tax-exempt purposes. *See, e.g.,* n. 7 *infra.*

The advertising, moreover, was typical commercial publicity. Some ads were eye-catching, others strictly factual; some covered a fraction of a page, others several pages; some were in black and white, many were in bright color. Many ads were identical to those appearing in medical journals published by non-exempt organizations. The differences between ads plainly reflected the advertiser's marketing strategy rather than their probable importance to the reader. That the advertisements were placed in stacks—a fact upon which plaintiff places significant reliance—had no bearing on their purported educational function. It suggests instead that the ads were considered distracting and out of step with the sober and understated tenor of the journal's editorial content.

All advertising is, of course, educational or informational to some degree. However, Treasury Regulations provide that advertising income of journals like *Annals* generally is taxable. Treas.Reg. § 1.512(a)–1(f) (1975). Example 7 under Treas.Reg. § 1.513–1(d)(4)(iv) closely resembles the situation here, positing a tax-exempt organization that sells advertising space in its journal but limits the advertising to matters within the professional interest of its members. The organization requires the advertising to conform to certain standards of taste, fairness and accuracy, but otherwise leaves the content and form of the advertising to the discretion of the advertis-

operation of the gift shop was held to be substantially related to the hospital's exempt purposes because "[b]y providing a facility for the purchase of merchandise and services to improve the physical comfort and mental well-being of its patients, the hospital is carrying on an activity that encourages their recovery and therefore contributes importantly to its exempt purposes." There is no indication that the gift shop was operated by patients; its relationship to the hospital's tax-exempt purpose lay in the fact that the goods and services it provided could enhance the comfort of the patients. *See also* Rev.Rul. 69–268, 1969–I C.B. 160 (hospital cafeteria is substantially related); Rev.Rul. 69–269, 1969–1 C.B. 160 (hospital parking lot is substantially related). While each of these operations might have been deemed tax-exempt as operated primarily for the convenience of the patients, *see* pp. 535–36 *infra*, the

Commissioner chose instead to rule that they were substantially related to the hospital's tax-exempt purpose.

3. The hit-or-miss nature of the advertising was highlighted by one of plaintiff's own witnesses who suggested that adds could help readers understand the journal's editorial content by supplementing articles discussing a particular drug or medical device. Yet it is clear that no effort was made to coordinate the advertising with the journal's editorial content. Thus, if an article discussed a particular new drug or device, it would be pure coincidence for that product also to be featured in an advertisement in the same issue of the journal.

4. For example *Annals* often carried ads for Valium, Insulin and Maalox. *See, e.g., Annals of Internal Med.,* July 1975 at I–0, I–58 & I–64.

ers. Despite the informational character of the advertising, the example concludes that "the publication of advertising designed and selected in the manner of ordinary commercial advertising is not an educational activity of the kind contemplated by the exemption statute."

To avoid the UBIT an exempt organization would have to run its advertising business much differently than did plaintiff. For example, it might make a concerted effort to provide advertising that comprehensively surveys a particular field, includes all recent developments in that field, or otherwise makes a systematic presentation on some subject relevant to the organization's exempt purposes. To qualify for exemption, the advertising package as a whole must serve an identifiable educational objective that goes substantially beyond the informational content of the individual advertisements. This standard is not met where, as here, the comprehensiveness and content of the advertising package is entirely dependent on each manufacturer's willingness to pay for space and the imagination of its advertising agency.

The court therefore finds that the advertising in *Annals* did not contribute importantly to the College's tax-exempt purposes. Rather, any educational function it may have served was incidental to its purpose of raising revenue.

## B. *The Convenience Issue*

Even though the advertising in *Annals* is not substantially related to the College's exempt purposes, the income gained from it would nevertheless be tax-exempt if the advertising business was carried on primarily for the convenience of the College's members. 26 U.S.C. § 513(a)(2) (1976).

1. There is little guidance on the subject of when income subject to the UBIT nevertheless remains tax-exempt because it derives from activities conducted primarily for the convenience of the organization's members. The statute itself simply provides that "the term 'unrelated trade or business' . . . does not include any trade or business . . . which is carried on . . . by the organization primarily for the convenience of its members . . . ." 26 U.S.C. § 513(a)(2) (1976). In order to qualify under this language, it would appear that the activity in question has to be carried on for the convenience of the organization's members in their capacity as members. Were the statute construed otherwise, there would be no end to the types of goods or services an organization could provide its members while avoiding tax on the income so derived. This would significantly undercut the purpose of the UBIT.[5]

While the legislative history of section 513(a)(2) is sparse, it supports this interpretation. The House and Senate Reports give the examples of dining rooms, restaurants and dormitories operated by a university for use by its students as falling within this exception. H.R.Rep. No. 2319, 81st Cong., 2d Sess. 37 (1950), *reprinted in* 1950–2 C.B. 380, 409; S.Rep. No. 375, 81st Cong., 2d Sess. 29 (1950), *reprinted in* 1950–2 C.B. 483, 505. Each of these examples involves facilities that assist students in fulfilling their role as students. For example, dormitories allow students to live close to classrooms and libraries, and to share quarters with other students. On campus restaurants and cafeterias facilitate student interaction before, after and between classes.[6] *See also*

---

5. Thus, tax-exempt organizations could, as a side-line, operate vacation resorts, catalogue shopping services, apartment houses or any other enterprises so long as access were largely limited to members. All such enterprises could be described as operating for the convenience of the members, yet their activities would be entirely unrelated to the organization's tax-exempt purposes. Allowing organizations to engage in such enterprises tax free would raise concerns about unfair competition with taxable entities; such concerns were the principal im-

petus for enactment of the UBIT. *See Disabled American Veterans v. United States,* 227 Ct.Cl. 474, 479, 650 F.2d 1178 (1981); H.R.Rep. No. 2319, 81st Cong., 2d Sess. 36 (1950), *reprinted in* 1950–2 C.B. 380, 409; S.Rep. No. 2375, 81st Cong., 2d Sess. 28 (1950), *reprinted in* 1950–2 C.B. 483, 504; Treas.Reg. § 1.513–1(b) (1975).

6. The Supreme Court has recognized that student interaction serves an important educational function. *See Sweatt v. Painter,* 339 U.S. 629, 634, 70 S.Ct. 848, 850, 94 L.Ed. 1114

*St. Luke's Hospital v. United States,* 494 F.Supp. 85, 92 (W.D.Mo.1980) (pathology tests performed by hospital primarily for the convenience of member physicians).

█ The advertising here may have served the convenience of *Annals* readers in their capacity as physicians but not in their capacity as members of the College. The difference is subtle but important. The members' interests as members concern such matters as attending the College's educational functions, participating in research and testing, disseminating health information to the public and promoting quality medical education. The members' interests as physicians are much broader and include all the aspects of medical practice. The advertising in *Annals* may assist practicing physicians by informing them of new products, publicizing the availability of positions and helping them sell their medical equipment. The advertising does not, however, have any connection with their responsibilities as members of the College.[7]

█ 2. In any event, the court finds that the advertising business was not carried on *primarily* for the convenience of the College's members in any capacity. In another context, the Supreme Court has interpreted the term "primarily" to mean " 'of first importance' or 'principally.' " *Malat v. Riddell,* 383 U.S. 569, 572, 86 S.Ct. 1030, 1032, 16 L.Ed.2d 102 (1966) (construing section 1221(1) of the Internal Revenue Code which denies capital gain treatment to "property held . . . primarily for sale . . . in the ordinary course of . . . business"). There seems to be no reason to depart from this common sense definition in interpreting section 513(a)(2).

The advertising business of *Annals* was operated in material respects like the advertising business of any other publication.

(1950); *McLaurin v. Oklahoma State Regents,* 339 U.S. 637, 641, 70 S.Ct. 851, 853, 94 L.Ed. 1149 (1950).

**7.** An advertisement for another publication, *Medical Economics,* illustrates this point. The ad, which appeared regularly in *Annals,* promised that *Medical Economics* would help provide answers to such questions as whether "the

All advertising serves the convenience of some of those seeing it, otherwise it would be ineffective and unprofitable. However, the primary purpose of advertising from the publisher's perspective is to make money. While the enhanced convenience of the readers may have been a welcome incidental benefit, the court finds that the College's primary purpose in carrying advertising in *Annals* was to raise revenue.

Conclusion

The advertising published in *Annals* is not substantially related to the College's exempt purposes nor is it published primarily for the convenience of the College's members.

The clerk is directed to dismiss the petition with costs to the prevailing party.

new Seville [is] worth its $12,479 base price" and that it would instruct readers on how to "double [their] gain through a quirk in the tax law." *Annals of Internal Med.,* July 1975 at I–40. While such issues may be of interest to the reader, their resolution surely has no bearing on his responsibilities as a member of the College.