EDWARD S. SMITH, Circuit Judge.
In this federal income tax case, appellant American College of Physicians (College) appeals from a judgment of the United States Claims Court[1] holding the College is not entitled to the refund of taxes paid on income earned from sales of advertising space in the College’s journal, Annals of Internal Medicine (.Annals). We reverse.

Issue

The sole question presented in this appeal is one of first impression for this court: whether the revenues derived by the College from advertising in Annals constitute “unrelated business taxable income” derived from a trade or business the conduct of which is not substantially related to the exercise or performance by the College of its tax-exempt purposes or functions. This appeal involves the College’s tax liability for the 1975 tax year.

Background

The College is an organization exempt from federal income taxation under 26 U.S.C. §§ 501(a) and 501(c)(3). Among its tax-exempt purposes are[2] “(1) to uphold and to maintain high standards in medical education, medical practice [and medical research]; (2) to encourage research, especially in clinical medicine, and (3) to foster measures for the prevention of disease and for the improvement of public health.” Membership in the College is limited to members of the medical profession en *1571 gaged in practice, teaching, research, or other pursuits in the field of internal medicine or in allied or related specialties.
Annals, a highly regarded medical journal in the field of internal medicine, is published by the College in furtherance of its tax-exempt purposes. Annals contains scholarly articles relevant to the practice of internal medicine, advertisements relating only to medical products, supplies, and equipment useful in the practice of internal medicine, and notices of positions, desired or available, in connection with the practice of internal medicine. Annals is available to members of the College as a benefit of membership and to nonmembers at a per issue price or by subscription. Circulation in 1975 was roughly 73,000.
Advertisements in Annals are “stacked” in two sections — at the front of, and behind, the editorial content — of each issue. Advertisements in medical journals published by commercial organizations are generally also grouped in stacks, rather than dispersed throughout an issue. The trial judge found that many of the ads appearing in Annals were identical to those appearing in medical journals published by nonexempt organizations. He also found that the advertising business of Annals was operated in material respects like the advertising business of any other publication.
Advertisements appearing in Annals were prepared by the advertisers and not by the College. The trial court found that the College did not use the advertising in Annals to provide its readers a comprehensive or systematic presentation of the goods or services publicized. Advertising space was made available in Annals at rates competitive with those charged by commercial organizations for advertising space in their medical journals.
The College has a long-standing policy of accepting only those advertisements relating to medical products (primarily drugs), supplies, and equipment useful in the practice of internal medicine and those classified advertisements of positions in connection with the practice of internal medicine. Proffered advertisements are screened for accuracy and relevance to internal medicine.

1975 Advertising Revenues.

In 1975, gross advertising income attributable to Annals was $1,376,322. Direct advertising costs were $833,050. Circulation income and readership costs attributable to Annals in 1975 were $1,057,754 and $1,351,167, respectively. Another publication of the College, the Bulletin, produced an overall loss of $96,471. The College timely reported taxable income of $153,388 and paid federal income taxes of $55,965 on that income for the 1975 tax year. Proceedings Below.
On or about June 12, 1979, the College filed with the Internal Revenue Service a timely claim for refund of these taxes. Failing to receive notice of disallowance of this claim, receipt of which was not waived, the College, on or about August 17, 1982, filed in the United States Claims Court suit for refund of the taxes. The trial court found that the advertising published in Annals is not substantially related to the College's exempt purposes nor is it published primarily for the convenience of the College’s members. Accordingly, the revenues derived from advertising in Annals were held to be taxable. The College appeals.
The trial court’s findings of fact are not to be set aside unless they are clearly erroneous. The legal conclusions of the trial court will not be set aside unless they are incorrect as a matter of law.[3]

Unrelated Business Taxable Income

The Internal Revenue Code provided at the relevant time, with certain exceptions not applicable here, that the income derived from the unrelated business of an organization which is exempt from taxation under 26 U.S.C. § 501(a) (1976) is taxable:[4]
*1572 There is hereby imposed for each taxable year on the unrelated business taxable income (as defined in section 512) of every organization described in paragraph (2) a normal tax and a surtax computed as provided in section 11. In making such computation for purposes of this section, the term “taxable income” as used in section 11 shall be read as “unrelated business taxable income”.
The College is an organization described in paragraph (2) — an organization exempt from taxation under 26 U.S.C. § 501(a) not eligible for certain exceptions. Section 512(a)(1) of title 26 of the United States Code provides:
[T]he term “unrelated business taxable income” means the gross income derived by any organization from any unrelated trade or business (as defined in section 513) regularly carried on by it, less the deductions allowed by this chapter which are directly connected with the carrying on of such trade or business * * *.
Section 513 provides:[5]
The term “unrelated trade or business” means, in the case of any organization subject to the tax imposed by section 511, any trade or business the conduct of which is not substantially related (aside from the need of such organization for income or funds or the use it makes of the profits derived) to the exercise or performance by such organization of its charitable, educational, or other purpose or function constituting the basis for its exemption under section 501 * * * except that such term does not include any trade or business—
(2) which is carried on, in the case of an organization described in section 501(c)(3) * * * by the organization primarily for the convenience of its members * * *[.]
The definition provided in section 513 is explained by Treas.Reg. § 1.513-l(a) (1976):
[U]nless one of the specific exceptions of section 512 or 513 is applicable, gross income of an exempt organization subject to the tax imposed by section 511 is includible in the computation of unrelated business taxable income if: (1) It is income from trade or business; (2) such trade or business is regularly carried on by the organization; and (3) the conduct of such trade or business is not substantially related (other than through the production of funds) to the organization's performance of its exempt functions.
There is no dispute in this case that the advertising income is from a trade or business that is regularly carried on. Thus, the only remaining issues are whether that activity is not substantially related to an exempt purpose or function of the organization, and, in any event, whether the advertising does not constitute an “unrelated trade or business” because it is covered by the exception of section 513(a)(2) as a trade or business which is carried on by the organization primarily for the convenience of its members.

‘‘Substantially Related” Standard

The relevant Treasury regulations outline the analysis required under the “substantially related” element of section 513:[6]
The presence of this requirement necessitates an examination of the relationship between the business activities which generate the particular income in question — the activities, that is, of producing or distributing the goods or performing the services involved — and the accomplishment of the organization's exempt purposes.
The regulations proceed to delimit the type of relationship required:[7]
Trade or business is “related” to exempt purposes, in the relevant sense, only where the conduct of the business activities has causal relationship to the achievement of exempt purposes (other *1573 than through the production of income); and it is “substantially related,” for purposes of section 513, only if the causal relationship is a substantial one. Thus, for the conduct of trade or business from which a particular amount of gross income is derived to be substantially related to purposes for which exemption is granted, the production or distribution of the goods or the performance of the services from which the gross income is derived must contribute importantly to the accomplishment of those purposes. Where the production or distribution of the goods or the performance of the services does not contribute importantly to the accomplishment of the exempt purposes of an organization, the income from the sale of the goods or the performance of the services does not derive from the conduct of related trade or business. Whether activities productive of gross income contribute importantly to the accomplishment of any purpose for which an organization is granted exemption depends in each case upon the facts and circumstances involved.
Further, the regulations provide that[8]
[i]n determining whether activities contribute importantly to the accomplishment of an exempt purpose, the size and extent of the activities involved must be considered in relation to the nature and extent of the exempt function which they purport to serve. Thus, where income is realized by an exempt organization from activities which are in part related to the performance of its exempt functions, but which are conducted on a larger scale than is reasonably necessary for performance of such functions, the gross income attributable to that portion of the activities in excess of the needs of exempt functions constitutes gross income from the conduct of unrelated trade or business. Such income is not derived from the production or distribution of goods or the performance of services which contribute importantly to the accomplishment of any exempt purpose of the organization.

Development of Section 513.

Prior to 1950, the test for whether income received by a tax-exempt organization was taxable was the destination of those funds, not their source.[9] The predecessor provisions to sections 511-513 were promulgated in response to the abuse of tax-exempt status by certain tax-exempt organizations which were operating unrelated commercial enterprises purely as a source of revenue.[10]
The evils sought to be remedied by that legislation were specific and limited, although at the time the problem was spiraling. The First Circuit, in Massachusetts Medical Society v. United States, noted that[11]
[i]n his message to Congress in 1950, President Truman sought legislation to correct “the few glaring abuses of the tax exemption privilege,” stating that it had been “misused in a few instances to gain competitive advantage over private enterprise through the conduct of business and industrial operations entirely unrelated to educational activities.” * *
Similarly, the Court of Claims, in addressing whether advertising in Annals was taxable during a different tax year, stated[12]
[t]he 1950 Act was a fairly limited measure, designed to distinguish the customary activities of exempt organizations *1574 from the operation of independent business enterprises entirely unrelated to the educational purpose of the organization. The publication of advertising in tax-exempt educational journals was a well-established practice before 1950, and Congress did not intend to treat such advertising on a par with an independently run advertisement placement agency.
Prior to 1967, the Commissioner took no steps to tax the advertising income of professional journals of tax-exempt organizations. In that year, the Treasury amended its regulations to provide that commercial advertising does not lose its identity as a trade or business “even though the advertising is published in an exempt organization periodical which contains editorial matter related to the exempt purposes of the organization.”[13] Hence, the Treasury adopted a fragmentary definition of trade or business.
The First Circuit in Massachusetts Medical Society,[14] and the Court of Claims, in American College of Physicians,[15] rejected the fragmentary approach, however, as inconsistent with the legislative history, with the treatment of deductions in the regulations, and with section 512(a) of the code, in favor of treatment of the integrated publication of a periodical as a “trade or business.” In American College of Physicians,[16] the court did not reach the sole issue before us:
Since we view as dispositive the issue of whether plaintiffs advertising activities, as a matter of law, constituted a “trade or business” for tax purposes — irrespective of whether the advertisements themselves are or are not substantively related to plaintiffs exempt purpose — we find it unnecessary to resolve this essentially factual dispute.
In the interim before the regulations were declared invalid, however, Congress enacted the Tax Reform Act of 1969 amending section 513.

Effect of Tax Reform Act

of 1969 on Section 513.

The Government asserts that the amendment of section 513 pursuant to the Tax Reform Act of 1969 reflects a congressional intent to tax advertising revenues as an unrelated trade or business. Subsection (c) was added to section 513:[17]
(c) Advertising, etc., activities
For purposes of this section, the term “trade or business” includes any activity which is carried on for the production of income from the sale of goods or the performance of services. For purposes of the preceding sentence, an activity does not lose identity as a trade or business merely because it is carried on within a larger aggregate of similar activities or within a larger complex of other endeavors which may, or may not, be related to the exempt purposes of the organization. Where an activity carried on for profit constitutes an unrelated trade or business, no part of such trade or business shall be excluded from such classification merely because it does not result in profit.
The Government avers that Congress expressly validated the regulations that were held invalid in Massachusetts Medical Society and in American College of Physicians. The Government, quite properly, recognizes that congressional action was not in response to the above cases.[18] Rather, the Government asserts that it reflects a broader policy decision to tax organizations such as the College. We disagree.
*1575 The Government relies on statements of the House Ways and Means Committee to the effect that it was anticipated that advertising income from a journal published by an exempt organization would constitute unrelated business income.[19] While the committee may have believed that advertising income should be taxed, it did not adopt a blanket rule. Rather, it expressly preserved the exemption for those trade or business activities that contribute importantly to the exempt function. The legislative history addresses advertising generally and does not grapple with specific factual situations. Congress heard testimony that medical advertising in journals such as Annals is substantially related to the exempt purposes of organizations such as the College, yet, Congress made no change to the “substantial relation” or “convenience” tests of section 513(a). Instead, it amended the statute only to provide that advertising activity shall be treated as a separate trade or business for purposes of analysis.
The Government’s reliance on HCSC-Laundry v. United States[20] is unavailing. That case held that a cooperative hospital service organization cannot qualify for tax-exempt status under section 501(c)(3) but, instead, may qualify only under section 501(e). The laundry was previously held exempt under section 501(c)(3)[21] which was unchanged by the addition of section 501(e).
Section 501(e), however, provided exact guidance in the treatment of cooperative service organizations and, in so doing, omitted any specific exemption for shared laundry organizations. In HCSC-Laundry, the specific provision, subsection (e), was held to control over the more general, subsection (c)(3), particularly in view of their interrelationship.
A different section of the code is involved in this case. Section 513(c) is not a “more specific” provision which governs the “more general” section 513(a). Rather, subsection (c) defines the trade or business to be analyzed under the substantially related test of subsection (a). Nor are we convinced of the congressional purpose asserted by the Government. We conclude that the Government has not established that Congress intended to tax all advertising revenues of all journals of exempt organizations. Even were we to agree that Congress did so intend, it failed to carry that alleged intent forward into the statute with language appropriate to effect that result.
We conclude that Congress, in enacting section 513(c), intended for advertising activity to be treated as a separate trade or business for purposes of the unrelated business income tax provisions. Section 513(a) expressly requires that, although considered a separate trade or business, the conduct of that advertising must be evaluated to determine whether it is not substantially related to an exempt purpose or function of the organization and to determine whether the conduct of the trade or business is not primarily for the convenience of the organization’s members, before that income is taxable. The trial judge undertook that analysis and we conclude that he erred.
The trial judge attempted first to determine whether the conduct of the trade or business is not substantially related to the performance of the College’s tax-exempt purposes. The College maintains that the advertising performs an educational function; a suggestion the court below found unpersuasive. The trial court focused instead on the commercial character of the advertising and on the degree of similarity to advertising activity carried on by commercial organizations. While it recognized *1576 the advertising had some degree of educational content, the trial court went on to state that:
To avoid the [unrelated business income tax,] an exempt organization would have to run its advertising business much differently than did plaintiff. For example, it might make a concerted effort to provide advertising that comprehensively surveys a particular field, includes all recent developments in that field, or otherwise makes a systematic presentation on some subject relevant to the organization’s exempt purposes. To qualify for exemption, the advertising package as a whole must serve an identifiable educational objective that goes substantially beyond the informational content of the individual advertisements. This standard is not met where, as here, the comprehensiveness and content of the advertising package is entirely dependent on each manufacturer’s willingness to pay for space and the imagination of its advertising agency.
The court below found any educational function of the activity to be incidental to the purpose of raising revenue.
Having found the advertising in Annals not substantially related to the College’s exempt purposes, the trial judge proceeded to determine whether it was nevertheless carried on primarily for the convenience of the College’s members in their capacity as members of the College and not merely in their capacity as physicians. He found that the advertising business was not carried on primarily for the convenience of the College’s members but, rather, for the primary purpose of raising revenue.
The College argues that the court below fashioned its own test — adding requirements unsupported by statute, legislative history, or regulation. The trial court’s test, avers the College, requires a noncommercial primary purpose. The College asserts that the trial court’s decision is contrary to authority, relies on the Internal Revenue Service’s generalizations that journal advertising is unrelated, and fails to recognize distinguishing facts present in this case. The Government, on the other hand, asserts that the trial court’s decision is consistent with both the intent of Congress and the applicable Treasury regulations.
We agree with the College that the trial court erred in imposing a more rigorous standard than is supported by the statute. The trial court did not, however, impose tax liability merely because the primary purpose was found to be to raise revenue. It relied on a variety of factors, among them the similarity to the content and conduct of advertising in commercial publications.
The commercial character of the activity is not, however, determinative. Rather, it is the substantiality of the relationship— the importance of the contribution of that activity — to the performance of the College’s exempt purposes or functions, that is determinative. The trial court’s analysis places too great an emphasis on the similarity of the activity to commercial advertising. Sections 511-513 impose tax liability for revenues derived from activities that are not sufficiently related to the exempt purpose or function of the organization; not by virtue of the commercial character of that activity.
The exempt purpose or function urged by the College was the medical education of internists including, but not limited to, dissemination of medical and pharmaceutical information. The College’s expert witnesses testified regarding the need for continuing pharmacologic information, particularly in view of the rapid pace of developments in internal medicine. Testimony was also elicited regarding the essential function performed by drug advertising to disseminate information on recent developments with respect to new drugs, changes in dosage forms and strengths of existing drugs, and additional indications and contraindications discovered based on use. Finally, the College’s experts testified that the advertising performed an essential “alerting” function to inform the physician of recent developments by disseminating information concerning those developments.
*1577 The trial court recognized that “all advertising is educational or informational to some degree.” The College introduced evidence that the advertising carried in Annals is screened with respect to subject matter and its content controlled. Advertising is accepted only of products and services related to the practice of internal medicine. The accuracy of information in the advertisements appearing in Annals is regulated, in part by information mandated by the Food and Drug Administration. Further, the College screens new advertisements for relevance to the practice of internal medicine. Similarly, classified advertising in Annals is limited to advertisements directly relevant to the practice of internal medicine. The advertisements are also indexed by advertiser.
The trial court erred in requiring the activity to meet a standard higher than that set out in the statute. We conclude the trial court erred in requiring that “[t]o qualify for exemption, the advertising package as a whole must serve an identifiable educational objective that goes substantially beyond the informational content of the individual advertisements.” The trial court was apparently distracted by the commercial character of the advertisements and failed to focus properly on the substantiality of the relation of the information content of the advertisements to the College’s educational function.
Comprehensive and systematic presentation of various aspects of the goods or services advertised, as the trial court would require, would doubtless enhance the strength of the relationship between the information content of the advertisements and the College’s educational function. The failure to present the information in that manner, however, does not establish the lack of an important contribution to the exempt function of the advertisements that were published in Annals. While new advertisements could be considered of greater educational value than old, repeated ads, the trial court failed to examine the contribution of the old, repeated ads to the educational function. Similarly, systematic presentation of advertisements on some subject relevant to the College’s educational function would doubtless further that educational purpose. However, the failure of the College to take additional steps that may have resulted in a more substantial relation to the exempt purpose does not establish that the content of the advertisements is not already substantially related to that purpose.
It was not necessary, in order to resolve the issue before it, for the trial court to find that the primary purpose of the advertising activity was to raise revenue. That finding is relevant only inferentially in that, if its primary purpose was commercial, the advertising business was not carried on primarily for the convenience of the College’s members. The record presents a very close question, but we cannot conclude, on the basis of the record before us, that the trial court’s finding, that the advertising was not carried on “primarily for the convenience of [the College’s] members,” is clearly erroneous. That the primary purpose may have been commercial, however, does not preclude a finding that the activity is substantially related to an exempt function.
We conclude that the trial court’s finding, that the advertising in Annals is not substantially related to the College’s tax-exempt, educational purpose, was clearly erroneous. While the educational function of the advertising may well have been secondary to the purpose of raising revenues, the evidence of record establishes that the advertising in Annals fulfilled an important educational function. The advertisements served to apprise internists of developments in their field. The trial court made no finding that the size and extent of the activity was excessive. On the basis of the evidence of record, the size and extent of the advertising activity appears to be reasonable in relation to the editorial content of Annals[22]
*1578 The evidence of record establishes that the contribution of the advertisements to the exempt purpose is an important one. We hold that the sales of advertising in Annals are substantially related to the exempt purpose of the College to educate internists and, therefore, are not taxable under section 511.
Not all the advertisements that were published in Annals, however, would appear to be substantially related to the exempt educational function.[23] Treasury Reg. § 1.513-l(d)(3) (1976) provides
where income is realized by an exempt organization from activities which are in part related to the performance of its exempt functions, but which are conducted on a larger scale than is reasonably necessary for performance of such functions, the gross income attributable to that portion of the activities in excess of the needs of exempt functions constitutes gross income from the conduct of unrelated trade or business. * * *
The Government, however, does not argue in this appeal that some portion of the advertising in Annals was in excess of what would be reasonably necessary for performance of the exempt function. Accordingly, it is not necessary for us to resolve that issue in this appeal.[24]
REVERSED.

. American College of Physicians v. United States, 3 Cl.Ct. 531 (1983).

. These purposes, inter alia, are set forth in the College’s Articles of Incorporation.

. Fed.R.Civ.P. 52(a); Heisig v. United States, 719 F.2d 1153, 1158 (Fed.Cir.1983).

. 26 U.S.C. § 511(a)(1) (1976).

. 26 U.S.C. § 513(a) (1976).

. Treas.Reg. § 1.513-l(d)(l) (1976).

. Treas.Reg. § 1.513-l(d)(2) (1976).

. Treas.Reg. § 1.513-l(d)(3) (1976).

. Trinidad v. Sagrada Orden, 263 U.S. 578, 581, 44 S.Ct. 204, 205, 68 L.Ed. 458 (1924).

. See C.F. Mueller Co. v. Commissioner, 190 F.2d 120 (3d Cir.1951).

. Massachusetts Medical Soc’y v. United States, 514 F.2d 153, 154 (1st Cir.1975) (quoting Hearings on Revenue Revision Before the House Committee on Ways and Means, 81st Cong., 2d Sess. 4, 5 (1950)). See also H.R.REP. NO. 2319, 81st Cong., 2d Sess. 36-37 (1950), S.REP. NO. 2375, 81st Cong., 2d Sess. 29, 107 (1950).

. American College of Physicians v. United States, 530 F.2d 930, 933 (Ct.Cl.1976) (resolved on grounds other than substantial relation of the activity to an exempt purpose).

. Treas.Reg. § 1.513-1(b) (1968).

. Massachusetts Medical Soc'y, 514 F.2d 153.

. American College of Physicians, 530 F.2d 930 (following reasoning of First Circuit in Massachusetts Medical Soc’y ).

. American College of Physicians, 530 F.2d at 931 n. 3.

. 26 U.S.C. § 513(c) (1976).

. The Government recognizes that the cases were decided subsequent to amendment of the code by the Tax Reform Act of 1969 and involved tax years prior to the effective date of the amendment.

. H.R.REP. NO. 413, 91st Cong., 1st Sess. at 50, reprinted in 1969 U.S.CODE CONG. & AD.NEWS 1645, 1695-96. See also S.REP. NO. 552, 91st Cong., 1st Sess. at 75-76, reprinted in 1969 U.S. CODE CONG. & AD.NEWS 1645, 2104-05.

. HCSC-Laundry v. United States, 450 U.S. 1, 101 S.Ct. 836, 67 L.Ed.2d 1 (1981).

. Northern Cal. Cent. Servs., Inc. v. United States, 219 Ct.Cl. 60, 591 F.2d 620 (Ct.Cl.1979) (holding that despite enactment of § 501(e), a cooperative hospital laundry remained a § 501(c)(3) exempt organization — a position expressly rejected in HCSC-Laundry).

. Treas.Reg. § 1.513-l(d)(3) (1976).

. The trial court cited the example of an advertisement ' for Medical Economics magazine, which offers financial and business advice to the practicing physician.

. Cf. Hi-Plains Hospital v. United States, 670 F.2d 528, 533 (5th Cir.1982) (holding that hospital pharmacy sales were substantially related to exempt function and remanding case to district court to resolve treatment of small amount of sales that were not substantially related to exempt purpose).